LITTLE ROCK GAS & FUEL COMPANY *v.* COPPEDGE.

Opinion delivered January 11, 1915.

1. WITNESSES—HUSBAND AND WIFE AS JOINT PLAINTIFFS—COMPETENCY AS WITNESSES.—The fact that the husband and wife are joint plaintiffs in an action does not prevent either of them from testifying in his or her own case.

2. ACTIONS—CONSOLIDATION—ACTION BY HUSBAND AND WIFE.—The act of May 11, 1905, providing for the consolidation of causes of action for trial, does not prohibit the consolidation of actions where both a husband and wife are parties plaintiff, the only limitation in the statute being that the actions shall be of a like nature or relative to the same question, and in such cases the court may consolidate the causes when it appears reasonable to do so.

3. EVIDENCE—HUSBAND AND WIFE AS PLAINTIFFS—HUSBAND AND WIFE AS WITNESSES.—Where two actions in which a husband and wife are parties plaintiff are consolidated and tried as one, the testimony of the wife can not be considered in the case of the husband, and

the testimony of the husband can not be considered in the case of the wife.

4.  NEGLIGENCE—GAS—PERSONAL INJURIES—QUESTION FOR JURY.—In an action for damages due to injuries received by escaping gas, due to negligence, although the evidence was conflicting, *held*, it was sufficient to warrant a verdict holding the defendants liable for negligence in permitting the escape of the gas.

5.  GAS—PERSONAL INJURIES—NEGLIGENCE—SIMILAR OCCURRENCES.—In an action for damages against a gas company for damages resulting from the escape of gas, due to negligence of the defendant company, it is not error to permit witnesses to testify that a few days prior to the date of the accident that the pressure of gas in the vicinity had become so low that their stoves went out, where the witnesses received gas from the same line of pipe that supplied plaintiff.

6.  MARRIED WOMEN—SEPARATE RIGHT OF ACTION—PERSONAL INJURIES— RIGHT OF ACTION OF HUSBAND.—A married woman may sue in her own name for damages growing out of personal injuries, without joining her husband, and such right does not deprive the husband of his common-law right to sue for the loss of the services, society and companionship of his wife, resulting from her injuries.

7.  HUSBAND AND WIFE—INJURY TO WIFE—RIGHT OF HUSBAND TO SUE.— Kirby's Digest, § 6287, gives to a husband the right to recover for the loss of the services and society of his wife, where death resulted to her by the wrongful act or negligence of another; it does not, however, take away the husband's common-law right to recover for the loss of her services and companionship from injuries sustained by her from the negligent act of another, where death did not ensue.

8.  DEFINITION—"SERVICES"—HUSBAND AND WIFE.—Where a husband is entitled to recover for the loss of his wife's services, due to the negligent act of another person, the word "services" *held*, not to contemplate merely that wages should be paid the wife for the work actually performed by her, but rather to imply whatever assistance, aid or comfort she would be expected to render her husband in all the relations of domestic life.

9.  DEFINITIONS—"CONSORTIUM"—HUSBAND AND WIFE.—The word "consortium" includes aid, society, companionship, assistance and affection.

10.  HUSBAND AND WIFE—INJURY TO WIFE—HUSBAND'S ACTION—DAMAGES. —In an action for damages against defendant, by a husband, for damages occasioned by loss of the "services" and "consortium" of his wife, caused by defendant's negligence, the two elements of damage may be considered, and where plaintiff's wife was rendered unconscious, by the escape of natural gas, suffered great pain, and was

obliged to submit to the amputation of one leg, and a verdict in favor of the husband for $7,500, will not be held to be excessive.

11. EVIDENCE — GAS — PERSONAL INJURY — EXPERIMENTS — DISCRETION OF COURT.—Where plaintiff was injured by the escape of natural gas, it is within the discretion of the trial court to refuse to permit defendant to make experiments in plaintiff's home, by permitting natural gas to escape into rooms where persons were exposed thereto.

Appeal from Pulaski Circuit Court; *Guy Fulk,* Judge; affirmed.

*Bradshaw, Rhoton & Helm,* for appellants.

1. The court erred in consolidating the causes. Necessarily the husband and wife must both testify for themselves and for each other. 86 Ark. 130.

2. In order to recover, two things must be established. (1) Negligence of defendant and (2) that this negligence was the proximate cause of the injury. Plaintiffs failed in both respects.

3. Evidence as to the presence of gas at other times and places was not admissible. 19 Ind. App. 663; 49 N. E. 1085; 53 N. E. 486-7; 59 *Id.* 413.

4. It was error to refuse to require the plaintiffs to permit defendants to make experiments in plaintiffs' residence. 32 N. E. 874; 22 N. W. 176; 53 Am. Rep. 14; 11 Neb. 363; 9 N. W. 548; 17 Cyc. 291-294.

5. The verdict is excessive. Kirby's Dig., § 6288. The court erred in refusing the instructions asked for defendants.

*Coleman & Lewis,* for appellees.

1. The causes were properly consolidated. Act May 11, 1905; 90 Ark. 482. The court carefully instructed the jury *not* to regard the husband's testimony in the wife's case, nor the wife's in the husband's case. There could be no prejudice.

2. There is no error in the court's charge, and the evidence is ample to sustain the verdict.

3. Evidence of gas pressure at other times and places was admissible. 49 N. E. 1085; 59 *Id.* 413; 32 S. E. 327; 110 Ark. 188; 99 *Id.* 597; 199 Fed. 742.

4.. It is in the discretion of the court to require or refuse to permit a party to submit to experiments or tests. 60 Ark. 485; 11 Am. Cas. 844, note.

5. The verdict is not excessive in the husband's case. Rogers on Domestic Relations, § 267; Watson on Damages for Personal Injuries, § 489; etc. It is not even necessary to prove the value of the wife's companionship and society. Watson Pers. Inj., § 319; 102 Mo. 669.

HART, J.. P. N. Coppedge and Anna Coppedge, his wife, instituted separate actions against the Little Rock Gas & Fuel Company and the Pulaski Gas Light Company to recover damages for injuries sustained by Anna Coppedge on account of the alleged negligence of the defendants. Over the objection of the defendants the cases were consolidated and tried together. The jury returned a verdict for the plaintiff, P. N. Coppedge in the sum of $7,500.00, and in favor of Anna Coppedge in the same sum. Judgments were rendered upon the verdicts and the defendants have appealed.

The cases were ordered consolidated by the court under the act of May 11, 1905, which is as follows: "When causes of action of a like nature or relative to the same question, are pending before any of the circuit or chancery courts of this State, the court may make such orders and rules concerning the proceedings therein as may be conformable to the usage of courts for avoiding unnecessary costs or delay in the administration of justice, and may consolidate said causes when it appears reasonable to do so." Acts of 1905, page 798.

The action of the court in consolidating the two causes of action is assigned as error by counsel for the defendants. The reason given is that under the fourth subdivision of section 3095 of Kirby's Digest the husband and wife can not testify for or against each other.

Hence they insist that the action of the court in permitting husband and wife to testify in his or her own case was necessarily prejudicial to the rights of the defendants in the other case. We can not agree with them in this contention.

In the case of *Railway Co.* v. *Amos,* 54 Ark. 159, the opinion in which was rendered before the act in question was passed, a joint action was instituted by husband and wife against the railway company to recover damages for personal injuries sustained by them by the alleged negligence of the railway company. No objection was made, it is true, to the joinder of the two causes of action, but objection was made to the plaintiffs testifying in the case. The court said: "But either was a competent witness in his or her own behalf, and the rule is settled by the previous decisions of this court that, in cases in which a party may be a witness for himself, marriage is not a disqualification as to his interest in the cause, notwithstanding the other party to the marriage is a party to the suit."

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *McCullough,* 101 Ark. 254, which was decided subsequent to the passage of the act in question, the court held: "Where a husband and wife sued jointly for personal injuries to the wife, the husband was a competent witness in his own behalf, and a general objection to his testimony was insufficient to call attention to the fact that he was incompetent to testify in his wife's behalf."

(1) So, it may be taken as settled by these two decisions that the fact that the husband and wife are joint plaintiffs in an action does not prevent either of them testifying in his or her own case.

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Raines,* 90 Ark. 482, the court held: "1. The object of the act of May 11, 1905, providing for the consolidation of causes, was to save a repetition of evidence and an unnecessary consumption of time and costs in actions depending upon the same or substantially the same evidence or arising out of the same transactions."

"2. Where separate actions by husband and wife against the appellant were tried together the husband was competent to testify in his own action, and a general objection to his testimony was insufficient to call for an instruction that it was not competent in the wife's action."

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Broomfield,* 83 Ark. 288, the court, in considering the act in question, held that it was not necessary that the parties should be identical and said that the act leaves it to the discretion of the trial court as to the consolidation of actions of a like nature or relative to the same question pending before the court, without any reference to the identity of the parties and without restriction as to the causes of action which may be joined in the same suit, so, too, in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Harden,* 83 Ark. 255, the court held there was no error in consolidating the two cases for the purpose of trial. There, as here, there were separate verdicts and judgments, and damages were distinct and separate, but the main issues in the cases were the same.

The causes of action now before us were relative to the same question and grew out of the same alleged act of negligence on the part of the defendants. The court gave the following instruction:

"The cases of *Mrs. Anna Coppedge* v. *Pulaski Gas Light Company et al.,* and *P. N. Coppedge* v. *Pulaski Gas Light Company et al.,* have been consolidated for trial, but remain separate and distinct suits. Under the laws of this State a husband can not testify for or against his wife; nor can the wife testify for or against the husband. The court, therefore, charges you that you will not consider the testimony of P. N. Coppedge for any purpose in the case of *Mrs. Anna Coppedge* v. *Pulaski Gas Light Company et al.,* and you will not consider the testimony of Mrs. Anna Coppedge for any purpose in the case of *P. N. Coppedge* v. *Pulaski Gas Light Company et al.*

(2) It will be presumed that the Legislature, when it passed the act in question, had in mind the statute forbidding husband and wife from testifying for or against each other and it will be noted that no exception was made to the consolidation of actions where both husband and wife were parties plaintiff. The only limitation in the statute was that the actions should be of a like nature or relative to the same question, and that in such cases

the court might consolidate the causes when it appeared reasonable to do so. We are of the opinion, therefore, that the court did not err in consolidating the two causes for the purpose of trial.

At the time the injury was sustained, P. N. Coppedge and Anna Coppedge, his wife, resided at 3215 Bishop street in the city of Little Rock. They had lived at that place about five years. They occupied a four-room cottage and the rooms had doors opening into each other. The defendants supplied them with natural gas and in the dining room the gas was connected with a No. 83 Odin stove which had three burners. About 10 o'clock on the evening of December 11, 1912, P. N. Coppedge returned to his home and found the house dark and the doors locked. He went around the house and heard his wife groaning. He then broke open one of the doors, rushed into the house, and found his two little children lying on the bed dead and his wife lying there unconscious. Mrs. Coppedge did not regain consciousness until the second morning after this occurred. After she regained consciousness she complained of intense pain throughout her bronchial tubes and in her lungs for about a week. She then suffered severe pains in her legs and her right leg became so diseased that it was necessary to take her to a hospital where, on January 1, 1913, it was amputated just below the knee. A few days later she has a similar attack in her left leg which caused her a great deal of pain but she recovered without having to have that leg amputated.

At the trial Mrs. Coppedge testified substantially as follows: I am twenty-nine years old. On the 11th day of December, 1912, my husband, after breakfast, left for his business down town. There was a fire in the gas stove in the dining room at breakfast time but after breakfast I turned it out. I relighted it about 9:30 or 10 o'clock in the morning that my children, aged five and three years, might play in there. The stove had three burners and I lighted the two north burners. The children played in the dining room until about 11:30 o'clock.

I turned out the fires in the other stoves in the house and we had lunch about 12 o'clock. At that time only two of the burners in the stove in the dining room were burning. After lunch the children and I went into the adjoining bed room and laid down. It was cold and the wind was blowing. The door between the two rooms was open. None of the windows was open. About 1 o'clock Mr. Coppedge talked to me over the telephone. I then turned down the two burners which were burning so that they would not make such a roaring sound but left both of them burning freely. I then lay down on the bed again with my children. I went to sleep and do not remember anything else until I regained consciousness about two days later.

P. N. Coppedge testified: I left home for my work on the morning of the accident about 7 o'clock. I usually light the fires in the morning and the gas was burning in the dining room when I left home. I talked with my wife over the telephone about 1 o'clock, but did not get home until about 10 o'clock that night. My house was dark when I reached it and I heard my wife groaning. I broke open the door and when I got into the house smelled an odor which I thought was gas. When I got in the house and passed through the dining room I heard the gas roaring through the burners and turned one of them off. My children were dead. My wife was carried out on the front porch and later brought back into the house. She remained unconscious for two days and suffered great pain until she was carried to the hospital where, after the amputation of one leg, she finally recovered.

Two of the neighbors of Mr. Coppedge testified that they went into the house right after him on the night of the accident and that the gas was then rushing through one of the burners of the stove in the dining room.

Another witness for the plaintiff's testified that he went to their home between 10 and 11 o'clock on the morning of the accident and that the fire in the gas stove in the dining room was burning at that time.

The pipe line of the defendant which furnished gas to the plaintiff was on what is called a dead end. By a "dead end" pipe line is meant one which is not connected with any other line so as to make a complete circuit. One end is connected with the main line and extends out from it and the other end is closed up.

Other witnesses for the plaintiff, who were furnished gas from the same dead end line, and who had stoves of a similar kind to that of the plaintiffs, testified that the pressure became so low on different days in December, 1912, that the fires which they had burning in their stoves went out. There was also testimony adduced for the plaintiffs which tended to show that there might have existed what is known as "back firing" in the stove of the plaintiffs at the time the injury occurred. That is, that the gas might have been burning in the stove in a way that would not have been apparent and yet there might have been a partial combustion which would have created a poisonous gas.

The testimony on the part of the defendants is substantially as follows: The defendants piped gas to the city of Little Rock from their gas fields in the State of Louisiana and in the southwest corner of the city have a reduction plant where they reduce the pressure of the gas, and from there distribute it out over the city in pipe lines to their various customers; that water never accumulates in a pipe line with a dead end; that on the day of the accident there was not any lowering of the pressure of the gas different from that which happened on other days; that it was impossible to have at all times a uniform pressure of the gas; that when gas which is burning in a stove is turned down too low carbon monoxide may be formed; that carbon monoxide is a very poisonous gas and is free from color or odor and is of almost the same density as air; that the natural gas used by the defendants consists of 97-8/10 per cent of methane by volume, 1-25/100 per cent. of carbonic acid gas, and 95/100 of one per cent. of nitrogen; that gas coming from the same wells would remain practically the same for

a good many years; and that not a single one of these constituents is poisonous to the slightest extent.

Experts for the defendants made a test by permitting gas to flow through a stove similar to that used by the plaintiffs in a closed room for several hours and testified that they with others remained in the room during the whole time and felt no inconvenience whatever from the escaping gas.

Other evidence showed that if natural gas was supplied in a closed room in sufficient quantities a person there might become asphyxiated.

It was also shown on behalf of the defendants that the flue of the stove in the dining room of the plaintiffs was choked up with soot and the witness who examined it stated that it had become so hard that he could not pull it out with his fingers but had to get up on the roof and punch it out with a stick.

In rebuttal P. N. Coppedge testified that he reached up in the flue of the stove in the dining room with his hand and pulled out the soot which was loose and denied that it had become so hard that it had to be punched out from the top with a stick and denied that the witness for the defendant had punched it out from the top.

Other evidence for the plaintiffs tends to show that the soot in the flue was loose and was raked out with the hand from the inside of the room.

C. P. Langford, for the plaintiff, testified that he worked in the natural gas business from 1903 until 1913, that he helped put in gas lines in various cities in Arkansas, that the gas for which he laid lines was from the defendant's fields in Louisiana, and that in laying pipe lines for gas dead ends are avoided as far as possible because where there is a dead end, the main line is likely to draw the gas out of the dead end and water then accumulates in the dead end.

Langford testified that if gas was passing through the main line at low pressure it would have a tendency, by suction, to draw the gas out of the dead end; that where there is a complete circuit there is a more nearly

uniform pressure, but that there is not the same pressure in a dead end that there is in the main line; that the gas from the Caddo or Louisiana fields has not much odor but that it will affect one who works in it, producing a headache and, if enough is inhaled, putting one to sleep; and that to inhale the fumes of it would make one sick.

An expert chemist also testified for the plaintiffs that he turned gas into a box with openings in it in which was placed a rabbit and that the rabbit soon died from the effects of the gas.

(3)    With much force it is insisted by counsel for the defendants that the evidence is not sufficient to warrant the verdict. No objection was made by counsel for the defendants to the testimony of Mrs. Anna Coppedge but, as we have already seen, the court instructed the jury that the testimony of husband and wife could only be considered in his or her own case. So, in testing the sufficiency of the evidence to warrant the verdict, the testimony of Mrs. Coppedge is not to be considered in the case of the husband; and the testimony of Mr. Coppedge is not to be considered in the case of the wife. Though the testimony may not be altogether satisfactory, it is not open to the objection that the verdict of the jury rested mere upon surmise. There were facts testified to in each case which, if believed by the jury, would account for plaintiffs' injuries being sustained by reason of the negligence of the defendants. If we could see that the verdict of the jury in either case could only have been reached by conjecture, it would be our duty to reverse the judgment; but if there is any substantial testimony, however conflicting, it is our duty to uphold the verdict.

The evidence in the case of Mrs. Coppedge tends to show that she lay down on the bed with her children some time after 12 o'clock and that she was called to the telephone about 1 o'clock. When she got up the fire was burning with a roaring sound through the stove and she turned it down "about medium," as she expressed it. The fire was still burning freely when she again went to

lay down.  She went to sleep and does not remember anything more until she regained consciousness about two days later.

Other evidence tends to show that the plaintiffs were supplied with gas from a line which had a dead end and that in such cases there was a tendency, when the gas in the main line was at a low pressure, for the main line to draw the gas out from the pipe line with a dead end and thus lower the pressure in that line.

Evidence on the part of the plaintiffs also shows that other patrons of the defendant who were furnished gas on the same line had had trouble by the pressure being so low that the gas in their stoves went out; there was also testimony tending to show that when the pressure of the gas was lowered so that perfect combustion was not had carbon monoxide, a very poisonous gas, might be formed.

Evidence for the plaintiffs further showed that when the pressure was very low there would not be a proper mixture of the gas and air and this would create what the witness called "back firing" and would result in fumes of poisonous gas being formed.

(4)   The testimony on the part of the defendants, it is true, tends directly to contradict this evidence, but the jury were the judges of the credibility of the witnesses and the weight to be given to their testimony.  This being the case, it can not be said that the verdict of the jury rested upon speculation merely; but from the evidence the jury might have found that the injuries sustained by the plaintiff resulted from the causes which we have just described and that the defendants were guilty of negligence in permitting these conditions to exist.

It is apparent that the testimony of the husband was not necessary to establish the cause of action in favor of the wife.  Mrs. Coppedge testified that she lay down at 1 o'clock; that she turned the gas down and left it burning and flowing through the burners at a medium rate, and that it was burning freely.

One of the neighbors who came into the house right behind the husband testified that the gas was pouring

through one of the burners of the stove. It was claimed by the defendant that soot had accumulated in the flue so that air could not pass freely through it, but one of the witnesses for the plaintiff, other than the husband, testified that the soot was loose in the flue and not packed together as the witness for the defendant described it and the jury might have inferred that the soot had not stopped up the flue of the stove.

Neither was the testimony of Mrs. Coppedge necessary to enable the husband to recover. One of the neighbors testified that when he went there to deliver some groceries between 10 and 11 o'clock in the morning, the fire in the dining room stove was burning and that it was a cold day. The husband testified that when he came into the house there was no gas escaping from any of the stoves except the one in the dining room and that the doors were open between the dining room and the room where Mrs. Coppedge and her children were found. He said that the gas was rushing through two of the burners in the stove in the dining room and that he turned one of them off as he rushed into the room where his wife lay. In this he is corroborated by neighbors who came in right behind him and who said that gas was coming through one of the burners in the dining room stove.

(5)   The next assignment of error is that the court erred in permitting witnesses to testify to the effect that a few days prior to this time the pressure of the gas had become so low that their stoves went out. We do not think there was any error in admitting this testimony. The object of legal inquiry is to ascertain the truth of the facts in issue in the pleadings, prohibiting collateral issues. This rule only requires that the evidence be relevant. It was the contention of plaintiffs that Mrs. Coppedge left the stove burning freely when she went to bed and that the pressure of the gas became so low that the fire went out, and in so doing, there was an incomplete combustion of the natural gas which caused a poisonous gas to be formed which escaped in the room and caused the injuries sustained by Mrs. Coppedge and the

death of her two children, or, that when the fire went out, the natural gas itself, when the pressure became greater, again came into the room in such quantities that the two children of the plaintiffs were asphyxiated and Mrs. Coppedge was so overcome by the quantity of gas which escaped into the room that her injuries resulted.

On the other hand it was the contention of the defendants that there was no more variation of the pressure of the gas on that day than on any other day and that the fact that the plaintiffs received their supply of gas from a pipe with a dead end in no sense caused the pressure of the gas to vary during the day, and that as a matter of fact their gauge showed that the pressure of the gas did not vary on that day.

The condition of the pipe line which supplied the plaintiffs with gas thus became a material issue in the case. The witnesses who testified for the plaintiffs received their supply of gas from the very same pipe which supplied the plaintiffs. Their stoves were in no essential respect different from that used by the plaintiffs. They testified that on other days, near to the date of the injury, the fires in their stoves had gone out because the pressure of the gas had become so low. This testimony, then, was not collateral to the issues joined by the pleadings and tended to establish the fact contended for by the plaintiffs. That is to say, that the gas furnished by the pipes which had a dead end varied greatly in the pressure and that this was caused by the main line drawing the gas out of the pipe line with a dead end and that water would then be formed in the pipe with the dead end. The conditions described by them were in all essential respects similar to the conditions described by the plaintiffs. Therefore the testimony was relevant and the objections of the defendants thereto go more to the weight of the testimony than to its relevancy.

The next assignment of error is that the verdict of the jury in the case of P. N. Coppedge is excessive. He recovered $7,500. The testimony shows that he expended more than $1,400 in medical services for his wife after

she was injured. It is the contention of counsel for the defendants that he was only entitled to recover this amount and that he could not recover anything for the loss of consortium of his wife.

It is true that in this State the wife may prosecute her suit independently of her husband for injuries inflicted upon her by the negligence of another. *Railway Co.* v. *Amos,* 54 Ark. 159.

(6) In the case note to 23 American and English Annotated Cases, at page 1125, it is said: "The rule prevailing in the great majority of the states is that the statutes generally known as the 'Married Women's Property Act' authorizing a married woman to sue for personal injuries in her own name without joining her husband and making the amount recovered her separate property, do not deprive the husband of his common-law right to sue for the loss of the services, society and companionship of his wife resulting from her personal injuries." Many cases are cited in support of the rule.

The same rule is announced in a case note to 33 L. R. A. (N. S.), at pages 1046 and 1047, and numerous cases are there cited in support of the rule.

(7) It is also contended by counsel for the defendant that the husband is not entitled to recover for the services and companionship of his wife, except in case of her death, as provided in section 6287 of Kirby's Digest. This section gives a husband the right to recover for the services and society of his wife where death resulted to her by the wrongful act or negligence of another person. It did not, however, take away his common law right to recover for her services and companionship from injuries sustained by her from the negligent act of another where death did not ensue.

The husband has a right to the services and society of his wife by virtue of the marital relation and they are purely personal to him. See *Billingsley* v. *St. Louis, I. M. & S. Ry. Co.,* 84 Ark. 617.

(8) The word "services" does not contemplate merely what wages should be paid the wife for the work

actually performed by her, but it rather implies whatever assistance, aid or comfort she would be expected to render her husband in all the relations of domestic life.

(9-10)   The word "consortium" includes aid, society, companionship, assistance and affection and the law does not attempt to separate these elements of damages.   So, it can not be said that the amount of damages recovered by the plaintiff, P. N. Coppedge, is excessive.

(11)   It is also contended that the court erred in not requiring plaintiffs to permit the defendants to make experiments in their home as they did in other places by permitting natural gas to escape into the room where persons were exposed.   This was a matter in the discretion of the court, and we do not think the court abused its discretion.   As we have already stated, the defendants made experiments under what they testified were similar conditions at other places.

Complaint is also made of the refusal of the court to give certain instructions asked for by the defendants. We do not deem it necessary to set out these instructions or to comment on them at length.   We have carefully examined the instructions given by the court at the request of the defendant and are of the opinion that the matters embraced in the refused instructions were contained in those given by the court, and it has been repeatedly held that it is not prejudicial error for the court to refuse to repeat instructions.

We have carefully examined the record in this cause and though we think there was a close question of fact presented to the jury in regard to the negligence of the defendants, we think the case was fairly and properly submitted to the jury, and there being evidence of a substantial nature to support the verdict, the judgment must be affirmed.