BEATRICE CREAMERY COMPANY *v.* GARNER.

Opinion delivered July 5, 1915.

1.  PRINCIPAL AND AGENT—UNDISCLOSED PRINCIPAL—LIABILITY OF AGENT.—
    Where an agent makes a contract for an undisclosed principal, both the principal and the agent may be held liable at the election of the party who dealt with the agent.

2.  PRINCIPAL AND AGENT—UNDISCLOSED PRINCIPAL—SELLER AND PURCHASER.—A. sold butter to B., making daily consignments, and B, making remittances at stated intervals. B. then made a contract with C. whereby it delivered all the butter received from A. to C. at cost price, B., however, continued making remittances to A. and A., without any knowledge of C., continued to make shipments to B.

*Held*, that under the facts C. would not be treated as B.'s undisclosed principal, but that C. was merely a purchaser from B.

3. ACTIONS—CONSOLIDATION.—Actions depending upon the same or substantially the same evidence, or arising out of the same transaction may be consolidated under Act 339, page 798, Acts of 1905.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*L. E. Hinton* and *Comer & Clayton,* for appellant.

1. It was error to dismiss that part of the complaint of the appellant praying for a judgment over against Garner for the sum of $1,951.02, and to consolidate that part of appellant's suit seeking to recover the $1,707.75 from Hicks. The court had jurisdiction to determine whether Hicks was trustee, and if he held the latter sum for the plaintiff. Having rightfully acquired jurisdiction for one purpose, it had jurisdiction for the purpose of granting complete relief, either legal or equitable, to which any of the parties were entitled. 70 Ark. 189; 14 Ark. 50; 37 Ark. 164, 187; *Id.* 286, 292; 75 Ark. 52, 55; 77 Ark. 570, 576. The two suits were not between the same parties at any time, and involved, in part, different issues. The court should not have consolidated them. 74 Ark. 54.

2. The contract between appellant and the Bunch Commission Company was assignable. The evidence clearly discloses an assignment of the contract. No particular words are necessary to constitute an assignment. 17 How. 353; 1 Wall. 604; 2 Am. & Eng. Enc. of L. (2 ed.); 1055; 2 Ruling Case Law, 614. After the assignment, the Bunch Company can only be held as the agent of Garner as undisclosed principal, and upon discovering the agency appellant had the right to hold the principal for the debt due it, certainly to the amount which Garner then owed and had not paid to the Bunch Company. 87 Ark. 434; 87 Ark. 374; 50 Ark. 433; 37 Fed. 49, 2 L. R. A. 749.

*H. M. Trieber,* for appellee Maloney, trustee.

1. The chancellor properly dismissed appellant's suit on account against Garner. No part of its complaint stated a cause of action cognizable in equity, as it did not allege that Hicks was holding the money at the time of

the suit. There is, therefore, no room for argument on the part of appellant that the chancery court, having acquired jurisdiction for one purpose, will hold it for all purposes.

2. There was no abuse of discretion in consolidating the cases. Act 339, Acts 1905; 83 Ark. 288.

3. The chancellor's findings on the merits are not against the preponderance of the evidence.

HART, J. On November 23, 1914, W. H. Garner and the German National Bank of Little Rock, Arkansas, as trustee, filed a bill of interpleader in the Pulaski Chancery Court in which the Beatrice Creamery Company, a corporation organized and doing business under the laws of the State of Oklahoma, and J. S. Maloney, as receiver of the T. H. Bunch Commission Company, a domestic corporation, were asked to be made parties defendant. The bill of interpleader alleges that during the months of September and October, 1914, the Beatrice Creamery Company shipped and consigned to the T. H. Bunch Commission Company, at Little Rock, Arkansas, butter of the value of $1,707.75; that upon the arrival of said butter at Little Rock, it was turned over by the Bunch Commission Company to W. H. Garner; that Garner sold said butter of the value of $1,707.75 to retail merchants, and that the proceeds were in his possession until October 15, 1914, when the same was paid over by him to the German National Bank of Little Rock, Arkansas, as trustee, to be held by it pending settlement of the ownership of said money; that both the Bunch Commission Company and the Beatrice Creamery Company were claiming said fund and demanding payment from the defendant Garner. The plaintiffs paid said money into the registry of the court, and asked that the receiver of the Bunch Commission Company and the Beatrice Creamery Company be compelled to interplead for said fund. The receiver of the Bunch Commission Company entered his appearance to the suit, but no service of any kind was had upon the creamery company, and that company did not enter its appearance to the action.

The Beatrice Creamery Company filed an independent action in the chancery court against W. H. Garner and W. A. Hicks, cashier of the German National Bank. The plaintiff alleges that the T. H. Bunch Commission Company entered into a contract with it whereby the creamery company agreed to sell and deliver to said commission company its output of butter which was shipped and delivered at Little Rock, Arkansas, and that said commission company was to have the exclusive right to sell the butter of the creamery company in the city of Little Rock; that subsequently the commission company assigned its contract with the creamery company to W. H. Garner, and that thereafter Garner continued to act as exclusive seller of the butter of the creamery company in Little Rock; that the creamery company since then has shipped butter to Little Rock of the contract value of $3,658.77, and that the same was accepted and received by the said Garner, but that he has failed and refused to pay for same. The complaint further alleges that Garner admitted liability for the purchase price of a part of said butter in the sum of $1,707.75, and that that amount had been paid by him to W. A. Hicks, as trustee, with the understanding that the latter should hold the same for the parties held to be entitled to it.

The prayer of the complaint is that Hicks be enjoined from paying said sum of money so held by him to any one until the final hearing of this cause, and that said amount then be paid to said creamery company to be applied as a credit on the amount alleged to be due it by said Garner, and that it have judgment against Garner for the balance alleged to be due, namely, the sum of $1,951.02.

On motion of W. H. Garner, the court ordered that that portion of the action instituted by the Beatrice Creamery Company against W. H. Garner and W. A. Hicks for $1,707.75 deposited in the registry of the court, be consolidated with the interpleader suit.

The court sustained a demurrer to the complaint of the creamery company asking a judgment against Garner for the sum of $1,951.02 and dismissed his complaint in

that respect without prejudice to his bringing an action at law.

At the hearing of the consolidated causes the testimony of W. H. Garner and T. H. Bunch was taken before the court orally, and their testimony reduced to writing and by order of the court filed as their depositions in the cause. It appears from their testimony that the T. H. Bunch Commission Company, before it became insolvent, did a large commission business in the city of Little Rock; that a part of its business was to sell butter, and that it had a contract with the Beatrice Creamery Company to take the entire output which it shipped to the city of Little Rock.

The commission company had a standing order with the creamery company for its butter and payment was usually made once a week, though at times longer intervals between payments occurred. W. H. Garner was in the employ of the Bunch Commission Company, and had charge of the sales of butter made by it to the retail merchants of Little Rock.

Subsequently, the Bunch Commission Company made an agreement with Garner whereby the latter was to take off its hands the butter consigned to it by the creamery company at the price that it paid the latter therefor; in other words, the commission company agreed with Garner to sell him the butter it received from the creamery company at the actual cost price, and Garner was thereafter to sell the butter to the retail trade of Little Rock at whatever price he desired.

The Bunch Commission Company had a rating with the creamery company, but Garner was unknown to it.

The commission company continued to receive consignments of butter from the creamery company under its contract with that company and made its remittances therefor about once a week as it had agreed to do. It turned the butter over to Garner at its actual cost, and Garner made settlements with the commission company once a week therefor.

Prior to the institution of this action the Bunch Commission Company became insolvent and a receiver was a pointed to take charge of its assets.

The court found that the T. H. Bunch Commission Company was not the agent of Garner in the purchase of the butter from the creamery company in the transaction involved in this suit and that the transaction was one of sale on open account by the creamery company to the commission company and a resale on open account by the commission company to Garner, and Garner having deposited the money in the registry of the court was discharged from all liability to either the Bunch Commission Company or the Beatrice Creamery Company. The clerk of the court, with whom the money had been deposited, was directed to pay the same to the trustee in bankruptcy of the Bunch Commission Company. The Beatrice Company has appealed.

(1) It is the well settled law of this State that where an agent makes a contract for an undisclosed principal, both the principal and the agent may be held liable at the election of the party who dealt with the agent. *Mississippi Valley Construction Co. v. Chas. T. Abeles & Co.*, 87 Ark. 374; *Bryant Lumber Co. v. Crist*, 87 Ark. 434.

(2) This is conceded to be the law by both parties, and it is the contention of counsel for appellees that where it is sought to hold one as an undisclosed principal for goods bought, it is essential that the intermediate party through whom the goods were secured shall have been the agent of the principal sought to be held and not his vendor, and, that the court having found that the Bunch Commission Company was the vendor of the butter to Garner and not the agent of the latter in purchasing the same, its finding of fact in that respect should not be disturbed.

It is the settled rule of this court that the findings of fact made by a chancellor will be upheld on appeal unless they are against the clear preponderance of the evidence. Tested by this rule, we think the findings of the chancellor should be upheld. The Bunch Commission Company was a corporation engaged in the general commission busi-

ness. A part of its business was to sell butter and it made a contract with the creamery company for the exclusive sale of the butter which it shipped to Little Rock. It was in the habit of receiving daily consignments of butter from the creamery on open account. The commission company had a credit with the creamery company, and nothing was said or known by the creamery company of any other party to the transaction. Garner had no credit with the creamery company, and was not known by it. He made his payments direct to the Bunch Commission Company, and the commission company sent its own checks to the creamery company in payment for the butter. At the time the contract between the Bunch Commission Company and the Beatrice Creamery Company was made, Garner was an employee of the commission company. No other contract was made by any one with the creamery company. The butter was consigned by the creamery company to the commission company under the original contract. Garner could in no sense be deemed an undisclosed principal when the original contract was made between the commission company and the creamery company. The mere fact that he subsequently agreed with the commission company to take over all consignments of butter to it from the creamery company at actual cost did not have the effect of making him an undisclosed principal.

(3) The court did not err in the consolidation of the causes under the act of May 11, 1905.* The object of this act providing for the consolidation of causes was to save a repetition of evidence and unnecessary consumption of time and costs in actions depending upon the same or substantially the same evidence or arising out of the same transaction. *St. Louis, I. M. & S. Ry. Co.* v. *Raines,* 90 Ark. 482; *Little Rock Gas & Fuel Co. et al.* v. *Coppedge,* 116 Ark. 334, 172 S. W. 885.

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Broomfield,* 83 Ark. 288, the court said that the act leaves to the discretion of the trial court the consolidation of actions

*Act 339, page 798, Acts 1905.

óf like nature relative to the same questions pending be-
fore the court without reference to the identify of the par-
ties and without restriction as to the causes of action
which may be joined in the same suit.

It follows that the decree will be affirmed.

McCulloch, C. J., (dissenting). The undisputed evi-
dence in this case is to the effect that Bunch Commission
Company concluded to go out of the business of selling
butter to retail men in Little Rock, and turned their con-
tracts with the Beatrice Creamery Company over to Gar-
ner to receive the butter, to pay for it, and sell it. There
is no conflict whatever in the evidence, and it is not suffi-
cient to warrant the inference that there was a resale of
the butter by Bunch Commission Company to Garner.
Garner testified that Bunch Commission Company de-
cided to go out of the city business, and, as a matter of
accommodation to him (Garner), turned the contract with
the Beatrice Creamery Company over to him, and that he
"ran the business, merely using Bunch's name for the
purpose of getting the butter." The testimony of T. H.
Bunch was to the same effect. His statement is as fol-
lows: "It was simply a favor we were trying to extend
Mr. Garner for past services; he had been faithful to us
for many years. We turned the contract we had with the
creamery company over to Mr. Garner, and continued to
let him order the butter in our name simply as a matter of
accommodation to him." They both testified that the sole
reason for leaving the contract in the name of the Bunch
Commission Company was that they were afraid that if
they undertook to get a new contract in Garner's name,
some other dealer might secure the contract with the
creamery company, and it was decided that the best way
was to leave the contract in the name of the Bunch Com-
mission Company. There is no doubt about the inference
which can be drawn from the statements of those two wit-
nesses, who were the only ones who testified on the sub-
ject.

The effect of the transaction was to make it an as-
signment of the contract by Bunch Commission Company

to Garner, and the commission company became the agent of Garner in performing the contract for the purchase of the butter. The fact that no such relation existed at the time the original contract was made with the creamery company does not alter the law applicable to the facts of the case. The contract was executory, and the sales thereunder were consummated only when deliveries of butter were made in installments from time to time. No sale was complete until there was a delivery of the butter. Therefore, when the installments were delivered through Bunch Commission Company to Garner, the latter was an undisclosed principal in the transaction. The transaction between Bunch Commission Company and Garner contained none of the elements of a resale to the latter, for Bunch and Garner both testified that the contract was turned over to Garner, and that he was to receive the butter and pay for it in the name of Bunch Commission Company for his own benefit. Suppose that the contract had been, by formal written indorsement, transferred to Garner, and the subsequent delivery of butter made through Bunch Commission Company. Would not the commission company under those circumstances have been the agent of Garner? If that be true, it necessarily follows that under the facts of this case, the doctrine of liability of an undisclosed agency applies, for, as before stated, the effect of the transaction was to assign the contract. Bunch Commission Company, by permitting the continued use of its name in receiving deliveries of butter under the contract without disclosing Garner's connection with the transaction, rendered itself liable to the creamery company for the price of the butter so received, but Garner is liable too, for, according to the true import of the transaction, he was the real purchaser of the butter, and the debt for the price was in fact his debt, and not that of the commission company. Garner is willing to pay for the butter, and has in fact paid the amount into the registry of the court. Bunch Commission Company has no just claim to the amount so paid, and, according to settled principles of law, it should be recovered by the creamery

company, and not by the general creditors of the Bunch Commission Company.

The justice of that view is made plain by the statement in one of the textbooks on the law of agency, giving a reason for the rule of liability of an undisclosed principal: "Inasmuch as the principal must ordinarily settle with some one—being liable to the agent, perhaps upon an express contract of indemnity or reimbursement, or upon an implied one wherever the nondisclosure of the principal and the pledging of the agent's own credit do not constitute such a violation of duty as to disentitle the agent to such relief—it seems to be a convenient 'short-cut,' if nothing more, to give the third part a direct claim upon the principal, instead of requiring him to pursue the agent who will then pursue the principal. Where this is attempted before the principal has paid or settled with agent—and this seems to have been the typical case in the first instances—nothing but more or less technical rules of procedure would seem to stand in the way of it." 2 Mechem on Agency (2 ed.), section 1729.

Mr. Justice KIRBY concurs in the views here announced.