St. Louis, Iron Mountain & Southern Railway Company
*v.* Campbell.

Opinion delivered April 6, 1908.

Release—validity.—A release of damages, executed for a valuable consideration by one who knew what he was doing, was binding upon him.

Appeal from Jefferson Circuit Court; *Antonio B. Grace*, Judge; reversed.

*Tom M. Mehaffy* and *J. E. Williams*, for appellant.

Appellee's own testimony fails to make out a case of mental incapacity at the time of executing the release sufficient to overthrow it. On the contrary, it clearly appears that he signed it intelligently with full opportunity to read it, accepted the payment, acted thereon, remembered it afterwards and practically ratified it in his letter of February third. The burden being on him, and no fraud or device to mislead or overreach him being shown, the release must necessarily stand. 82 Ark. 112; 50 Ark. 397; 19 Am. & Eng. R. Cas. 224; 109 Ill. 120; 46 Ark. 217; 62 Ark. 342; 82 Pa. St. 198; 59 Ia. 416; 44 Wis. 638; 18 Kans. 58; 67 Ia. 547; 48 Am. & Eng. R. Cas. 495; *Id.*

38; 75 Md. 162; 23 Atl. 397; 50 Ark. 396; 6 Wash. 202; 33 Pac. 351; 34 Pac. 665; 12 Atl. 78.

*Taylor & Jones,* for appellee.

Appellee was sick, sore, in pain, longing to go home on account of his mother's sickness, and was told that he must sign some instrument before he would be released from the hospital. He was in no mental condition to deal on equal terms with the companys' officials, or to understand the release. 73 Ark. 43.

BATTLE, J. On the third day of January, 1906, J. R. Campbell, a young man twenty-six years of age, was employed by the St. Louis, Iron Mountain & Southern Railway Company as a brakeman, was ordered to go between two cars and open a knuckle so as to couple them together. While between the cars, the engineer in charge of the engine pulling the train, because of a signal negligently given by the conductor of the train, moved the engine, causing the cars to come together, catching Campbell between them, and seriously injuring him. He sued the railroad company for damages. It answered, and, among other things, pleaded in bar of the action a release in the following words:

"Accounts payable

"Missouri Pacific Railway Co.

"To Jno. R. Campbell,                    Dr.

"Address: Cotter, Ark., pay at St. Louis, Mo.

"In full satisfaction and settlement of all claims and demands I have against the St. Louis, Iron Mountain & Southern Railway Company, and the Missouri Pacific Railway Company and leased, operated and independent lines, for personal injuries received while employed as brakeman on work train January 3, 1906, 8:30 A. M., Bergman, Arkansas; was caught between two aprons of two flat cars; had gone in to open knuckle; lever being gone on the side I went in on; the cars came together before I could get out, and caught me, causing contusion of chest, back and abdomen. I do hereby fully and forever release and discharge said companies from all claims or liabilities growing out of or resulting from said accident or injuries, in consideration of the payment to me of the sum of sixty-five dollars ($65.00).

"Received, St. Louis, Missouri, January 22d, 1906, of the Missouri Pacific Railway Company, sixty-five dollars and no-100, in full for the above account.

(Signed.)    "Jno. R. Campbell."

"Witnesses:   Wm. E. Jones.   Amy Allen.

"$65.00.

He received the $65 mentioned in the release.  He executed it.  The only question is, did he understand what he was doing?

He was injured on the third day of January, 1906, and was sent to a hospital in St. Louis, Missouri.  After he had been there about one week, he walked around the city; "would oftentimes walk around all morning and sometimes in the afternoon, and he went out two evenings before he left."  After he had been in the hospital three weeks, the doctor in charge thought he was sufficiently recovered to be discharged, and gave him what is called a clearance letter to the claim agent.  The doctor testified that "his mind was all right, and that there was nothing wrong with him."  He took the letter to the office of W. E. Jones, the claim agent, in a distant part of the city without assistance.  He presented the letter to the claim agent.  Jones, the agent, said to him:  "Campbell, it appears from this memorandum that you will be able to go to work on the first of February.  My son, why don't you stay in the hospital until you are dead sure to go to work on that day."  He said:  "I don't think I am taking any chances, and I have agreed with Dr. Vasterling (the doctor in charge of the hospital) that this is about right, and if you can fix me I would like to go to Redfield, where my mother is, and get a pass from there to Cotter."  Jones said:  "Campbell, how are you hurt?  Have you made a report?"  He replied:  "Yes," and Jones said:  "Then if I pay you sixty-five dollars, would you be satisfied?" and he said:  "Yes, perfectly."  Jones then called his stenographer, a young lady, and dictated a release in his presence and hearing, and she took the release out a few minutes and brought it back.  Jones read the release to him in the presence of the stenographer.  Jones said to him:  "You understand, Campbell, this is a release in full?"  And he said:  "Yes, sir."  Jones then paid him the $65.  He signed the release, and Jones and

the stenographer witnessed it. Jones gave him a pass to Redfield and Cotter, as he requested. At the same time he (Campbell) made out a lengthy report of the facts as to his injury, which required fully as much, if not more, intelligence to make out as it did to understand the release. Jones testified that he was perfectly rational when he executed the release. Miss Allen, the stenographer, testified to the same effect. About two weeks after executing the release Jones received from him the following letter:

"REDFIELD, ARK., Feb. 3, 1906.

"Mr. Wm. E. Jones,

"St. Louis, Mo.

"Dear sir:

"I am a brakeman from White River Division, was hurt 3d of January, and signed a release 23d. I told you that I thought I would be ready for work by the first of February. As I have been suffering at times with my lungs, especially last night, and as I would be pleased to stay at home, instead of coming back to hospital, and if you can grant favor by giving me an order to Dr. Jenkins at Little Rock and also a pass from Redfield to Little Rock and return for a few trips so that I may get treatment at home, the same will be appreciated. You extended my pass that takes me back to Cotter to the 28th of this month, and I hope I will be ready to report before expiration of same. I will close by thanking you for any favors you may grant me.

"Respectfully,

"J. R. Campbell, Brakeman."

From this letter it appears he remembered and recognized the release, and did not question its validity. Campbell testified in the trial in this action: "I signed something; I don't know what I signed. I never read. Mr. Jones shoved me out the paper—he had a paper or instrument of some kind, and he said it was a release. I never read it, as far as that is concerned, and I suppose may be it was a release." He does not deny that it was read to him. But he admitted that he signed it after being informed it was a release. He testified that he was not capable of understanding the nature of the release. Undisputed facts show that he was. He executed it as a re-

lease, and in a letter written about two weeks later mentions the fact that he signed it, and fails to show that he did not know what a release is, or why he executed it. He does not pretend that he was incapable of understanding it when the letter was written. Yet he spoke of it as if he understood it and asked for no explanation.

The jury in the case returned a verdict in favor of the plaintiff, but it is without sufficient evidence to support it.

Reverse judgment and dismiss action.