C. H. ATKINSON PAVING COMPANY *v.* EDWARDS.

4-4369

Opinion delivered July 13, 1936.

*Culbert L. Pearce,* for appellant.

*J. H. Moody, Jno. E. Miller* and *C. E. Yingling,* for appellee.

MEHAFFY, J. Appellee instituted this action in the White Circuit Court against the appellant alleging that while in the employ of the appellant, on August 8, 1935, he was ordered by his foreman to go down into a pit and there tamp cement, which was being poured into the pit. He had never worked in cement before, and had no knowledge of the reaction caused from cement burns; that he was forced to work in said pit, tamping the cement with his feet, one entire day, while cement was being poured in the pit and upon him; that the cement got on his body, arms and legs, and after a short time began to burn and caused him to suffer great pain; said burns caused large blisters, which later became deep and painful sores; that he suffered both pain and mental anguish for several weeks; that the injury was caused by the negligence of appellant, and that he suffered painful and permanent injury.

The appellant filed answer denying all the allegations, and further answered that appellee allowed or suffered some of the concrete to get into his boots, causing his legs to blister and become slightly sore; that appellant negotiated a satisfactory settlement of its liability to appellee, and on August 30, 1935, paid appellee $36, taking his receipt therefor, which sum fully compensated appellee for all injuries and damages suffered. It also paid $14, appellee's medical bill; that appellee thereupon executed and delivered to appellant a written release, discharging it from all claims and demands growing out of said injuries. Said release was filed with the answer and made a part thereof.

Witnesses to Edward's signature were D. C. Horton, W. A. Clark and H. L. Harris. There was a jury trial and verdict and judgment for the appellee in the sum of $3,000. The case is here on appeal.

Appellee's evidence showed that he was in the employ of the appellant; that he knew nothing about concrete or cement and that this was the first day he worked; that he was ordered by the foreman to get into the pit and tamp the cement, and, in obedience to the orders of the foreman, he did that; he not only did not know anything about the cement making blisters and sores, but the foreman told him nothing about it; he was severely burned. It is not contended, however, that the evidence is not sufficient to show liability, but it is earnestly insisted that the court should have directed a verdict for the appellant because the release, signed by the appellee, was a settlement of the claim, and disentitled appellee to recover.

The appellee testified as to the release, that he told the foreman that he was not going to sign anything, and that the foreman said that that was all right and that they were going to pay him for two weeks more, and let him be off for two weeks more, and that they would pay him $36 and let him be off two weeks. There was a woman in the back of the car, writing on a typewriter, and they handed appellee a paper and said: "Sign your name right there." They said it was a check for $36 and told him to sign his name. The paper was folded up. He signed it on the hood of the car; handed it back to Mr. Horton, and Horton handed it to the insurance man, and he looked at it and said: "All right, you can get your cash at the bank." He went to the bank and got $36. Mr. Horton said: "I think that is pretty good, when you are going to get your job back." Appellee thought he was signing a check. He did not read anything, and it was not read to him. Witness said that he could read and write a little bit, and could sign his name. He admitted that the name was his writing, but he said when he signed it it was folded up, and the paper was blank; and he just wrote "Tom Edwards" down there; there was not anything on it; it had no printed matter, or Edwards did not see any. Witness said he did not sign anything in the presence of Dr. Clark, Mr. Horton and H. L. Harris. Whatever he signed had no writing on it, and he thought it was the back of the check.

Dr. Clark testified that the appellee told him he had settled for $36, and that appellee asked him what he thought about it, and he said he thought it was pretty good, because they usually paid the boys half time. Dr. Clark testified that he had authority to give all the company employees treatment that was necessary, resulting from injuries like this, as long as they needed it. He was present when appellee signed a paper, but did not know whether it was a release or not; did not know what was said; standing in the door of his office, and Mr. Myers and his wife were in the car, and Tom was standing right beside the car, and they asked witness if he would witness Tom's signature, and he signed it. When asked if he knew how the paper was handled and whether it was folded or not, he said: "I paid no attention to those things. It seems to me the paper had never been folded. Tom signed it on the fender of the car." He did not know what the paper was. They merely asked him to witness the signature. Mr. Myers asked witness to sign as a witness. Mr. Myers was the adjuster who settled the claim. Witness was standing in his office door, and they were out in the street, ten feet away. Mr. Horton was standing on the sidewalk, and Harris, the negro, was there. Witness does not remember whether they read anything or not; they just asked him to witness the signature.

Mr. Horton testified that the settlement took place in front of Dr. Clark's office. The release was not folded when it was handed to Tom. Witness does not think the release was read to him, but he told him he was signing a release, and appellee kept asking witness if he was signing his job away, and he told him that he was not, that he was just signing a release so he could not go on and bring suit; did not read the release, but thinks Mr. Myers did.

Neither Mr. Myers, the adjuster for the company, nor his wife, nor Harris, who witnessed the signature, testified. Myers, having prepared the release, and handed it to the negro, probably knew more about the circumstances than any other person, except his wife; but, as we have said, neither of these was called to testify. There is very little dispute in the evidence as to what occurred at the time the release was signed. Edwards was an ig-

norant negro in the employ of Horton; he could read a little and sign his name, and he testified positively that he was told where to sign it; he thought he was signing a check, and did not know that he was signing a release. No reason is given why Mr. Myers, the adjuster of the company, and his wife were not called as witnesses. They were right at the car. Mrs. Myers was in the car, and the undisputed proof shows that Edwards signed the paper on the fender or hood of the car. Whether advantage was taken of this negro in getting him to sign the release, under the circumstances disclosed by the evidence, was a question of fact for the jury.

"A nominal or grossly inadequate consideration for a release will be given serious consideration as affecting the question of fraud in its procurement. When due weight is given to other surrounding conditions and there is evidence that the consideration is inadequate, it is a circumstance, which in connection with other circumstances, may be submitted to the jury, and, if grossly inadequate, it alone is sufficient to carry the question of fraud or undue influence to the jury, and where there is inadequacy of consideration, but it is not gross, it may be considered in connection with other evidence on the issue of fraud, but will not, standing alone, justify setting aside a contract or other paper writing on the ground of fraud. And, therefore, on the question of fraud *vel non* in inducing an employee to accept benefits from a relief department in release of the master's liability for negligent injuries, his situation, conduct and surroundings at the time, as well as the amount received, may be considered." 23 R. C. L. 395.

Here the negro, who was an ignorant laborer, was surrounded by the foreman, Dr. Clark, physician of the company, Mr. Myers, the adjuster, and his wife, and the appellee testified very positively as to what occurred.

"There cannot be a release of a cause of action for personal injuries without unequivocal acts showing expressly or by necessary implication, an intention to release. Generally the construction of the release as to the actual intent of the parties presents a question of fact to be determined from the surrounding conditions and cir-

cumstances, construed with reference to the amount of consideration paid and the language of the release itself. The amount of consideration paid should have considerable force in determining whether the releasee was simply paying the releasor for loss of time or some other specific element of damage, or whether it indicated payment of a substantial sum in consideration of which the releasee secured himself against all further developments and the releasor assumed the risk thereof." 23 R. C. L. 397; *Chicago, R. I. & P. Ry. Co.* v. *Matthews,* 185 Ark. 724, 49 S. W. (2d) 392.

It is next contended that the court erred in giving instructions Nos. 2 and 5. No. 2 was an instruction on the duty of the master to exercise reasonable care to furnish a safe place to work. This instruction has been approved by this court many times, and it directed the jury, if the appellant had failed to exercise such care and the appellee was injured without fault or carelessness on his part, they should find for the appellee unless they further found that appellee knowingly signed the release.

Instruction No. 5, objected to by appellant, is an instruction on the measure of damages, and is a correct statement of the law.

We have examined carefully all the instructions and the objections and have reached the conclusion that the jury was properly instructed.

It is next contended by appellant that the verdict is excessive. In addition to the testimony of appellee, as to the burns and the extent of his suffering, Dr. A. J. Dunklin testified that the examination of appellee disclosed that he had multiple burns, with the result that it scarred the tissues which were involved. These scars or burns involved the skin of the forearms, hands, fingers and legs, from approximately the lower third of the thigh downward, including the toes. There was some scar tissue formation in the left eye, as a result of the burns. There were some 46 of these scars. Dr. Dunklin testified that he had treated about 100 cases and some of these areas are not well after a period of five or six months. He said there was some question about the healing of these areas, but certainly his scars are permanent. He thinks that

appellee still suffers pain and discomfort. That his ability to work as a common laborer has been diminished; that he has ulcerating areas on his right hand and in the space between the fourth and fifth toes on the right foot; that he had ulcerating areas on three portions of his anatomy that are not well yet. That he had lost the end joint of his right index finger by amputation, and that back of this nub he had a deep ulcer, extending around the finger that is unhealed.

Dr. Clark testified that he had had some experience, not a great deal, in treating cement burns, and he does not think there is anything permanent in appellee's case; just like any other burn; lot of surface involved, but after a few days it will heal, except in spots; a concrete burn is mighty slow to heal; more so than an ordinary burn; he testified that he did not know whether the injury to the finger, the joint of which was amputated, was from the burn or not; he could have gotten it hurt and infection set in; he does not think that the prognosis is as severe as Dr. Dunklin gives it; he thinks the appellee is perfectly well so far as the burns are concerned.

The evidence shows that burns of the character suffered by appellee are more severe than ordinary burns, and appellee necessarily suffered great pain because of the burns. All questions of fact were properly submitted to the jury, and the jury passes on the credibility of the witnesses and the weight of their testimony.

We find no error, and the judgment is affirmed.