HARMON v. HARRISON.

4-6209                                            147 S. W. 2d 739

Opinion delivered February 17, 1941.

*Paul E. Gutensohn* and *Warner & Warner*, for appellant.

*Williams & Williams*, for appellee.

HOLT, J. Appellee sued to recover $3,000 damages alleged to have resulted when coming in contact with wet concrete, while employed by appellant.

The averments of specific acts of negligence in appellee's complaint are that (1) appellant was negligent in failing to warn appellee who was inexperienced in such matters of the danger of cement burns; (2) in failing to provide the appellee with safe and suitable coverings for his feet and legs to protect them from injury from cement and concrete burns; and (3) in furnishing unsanitary rubber boots and requiring appellee to wear them, when the boots were disease carriers and caused the appellee's feet and legs to become diseased.

Appellant answered denying every material allegation in the complaint, and in addition pleaded contributory negligence, assumption of risk and a release signed by appellee.

There was a trial and verdict in appellee's favor in the amount of $500, and from a judgment entered comes this appeal.

Appellant urges here the following alleged errors: "1. No actionable negligence in failing to warn plaintiff of danger, or in failing to provide safe and suitable coverings for his feet, or in failing to provide a reasonably safe place in which to work was proved. 2. Plaintiff assumed the risk and was not entitled to recover. 3. The plaintiff was guilty of contributory negligence and was not entitled to recover. 4. Plaintiff executed a binding release and was not entitled to recover. 5. The court erred in giving plaintiff's requested instructions over defendant's objection and exceptions. 6. The verdict is based on speculation and conjecture and is excessive."

We shall review these assignments in their order.

1.

The record reflects that appellee, 21 years of age, was employed by appellant, and at the time of his alleged injuries was working under the direct supervision and orders of Jess Short, appellant's foreman. On

orders from Short, appellee, after having first put on a pair of rubber boots which he procured from a supply in appellant's supply house, got down into a pit about four feet square, approximately five feet deep, partly filled with wet concrete, for the purpose of "puddling" or spreading the concrete by shoving it about with his feet with the aid of a pole. It was his duty to keep the concrete spread until it was poured to a designated level. While thus engaged, wet concrete "sloshed" over his boot tops and into his boots, burning and scalding his feet and legs. Wet concrete would also get into his boots when it was poured into the pit from the wheelbarrows in which it was carried by other employees.

Appellee had never before worked in wet concrete, in the manner in which he was engaged when injured. Appellant did not warn him that the wet concrete would scald, burn or injure him and appellee testified: "Q. Have you ever worked in wet concrete before? A. No, sir. Q. Prior to working for Harmon did you know there was danger from being burned by wet concrete? A. No, sir. . . . Q. You were asked by counsel for the defense if you knew they were concrete burns at the first time you reported this to Jess Short, did you know concrete would burn? A. No, sir, I didn't know concrete would burn. . . . Q. But you had never had any direct contact with wet concrete and didn't know it would burn? A. No, sir. . . . Q. Did he (meaning Jess Short, foreman) furnish you any equipment or did he warn you of the danger of wet cement? A. No, sir. Q. What did he say about that? A. Nothing. Q. What did he say when he put you to work? A. He just told me to get a shovel and told me what to do. . . . Q. And they didn't warn you about the danger of wet concrete? A. No, sir. . . . Q. Was there any warning given to you relative to the danger of cement burns? A. No, sir. . . . Q. Did they furnish you any socks or any covering to go over your feet? A. No, sir. . . . Q. How deep did you say the concrete was at that particular place? A. At that place I couldn't say in inches but I know it was over the top of my boots. . . . Q. State whether or not the

concrete, when it was being poured in there, got in your boots. A. Yes, sir."

From this evidence it appears that appellee was inexperienced in the work assigned to him. In fact, this was the first time he had ever attempted to work wading in wet concrete in the manner disclosed here. He was not aware of the danger attending such work nor did appellant give him any warning. Appellant's knowledge of these dangers was superior to that of appellee.

We think it was for the jury to say whether appellant was negligent in failing to warn appellee about any latent dangers connected with the work that appellant's foreman had directed appellee to perform and whether this failure to warn was the proximate cause of appellee's injuries. We cannot say as a matter of law that these dangers were obvious and patent to an inexperienced employee, such as the evidence in the instant case tended to show that appellee was. The jury has resolved this question in favor of appellee on substantial testimony, and we do not disturb that finding here.

In *Kurn* v. *Faubus,* 191 Ark. 232, 84 S. W. 2d 602, the rule is announced as follows: "The law is that where the perils of the employment are known to the master but unknown to the employee, the master has the duty of apprising the employee thereof, and a neglect by the master of such duty creates actionable negligence; but where the employee's knowledge of the perils of the employment equals or surpasses that of the master, then there is no duty upon the master to apprise the employee of something already well known to him. . . .

"In 18 R. C. L. 548, § 62, the rule is tersely stated as follows: 'Knowledge, then, or opportunity by the exercise of reasonable diligence to acquire knowledge, of the peril which subsequently results in injury to the employee is the foundation of the liability of the employer. Liability exists when the perils of the employment are known to the employer but not to the employee; and no liability is incurred when the employee's knowledge equals or surpasses that of the employer'."

## 2.

Appellant urges under its second assignment that appellee assumed the risk and cannot recover. We do not think so, for the jury found, under proper instructions, that appellee was inexperienced and did not appreciate the dangers and hazards incident to working in wet concrete. He could not assume risks about which he did not know and which were not obvious to him.

## 3.

Nor can we agree with appellant that appellee was guilty of contributory negligence. We think there is substantial evidence in the record to support the jury's finding that appellant was negligent in exposing appellee to the dangers incident to working in wet concrete without cautioning or warning him.

## 4.

It is next contended that appellee executed a binding release which bars recovery. Appellant's witness, McCloud, who secured the release, testified: "Q. Please state to the jury the circumstances of the signing of the release. A. Mr. Harrison came to the office and told me he would like to get started again and we sat down and talked it over and I explained to him that under Arkansas statutes we were permitted to pay half time for the time lost for a total of 60 hours at 15 cents, which was $9, and I explained to him that his time would be $9 which was coming to him, but that would be for full and complete release at that time, and he was satisfied and I sat down and wrote it out and he signed it. . . . Q. What did you say to Mr. Harrison about that release when you asked him to sign it? A. I laid the thing face down and told him that it was a release in full and told him to read it carefully before he signed it. . . . Q. Did you tell him that he had half time coming? A. I told him that the office was due him 60 hours at half wages, which would be $9. . . .

"Q. When an employee was off by reason of an injury did you pay him half wages for the time he was off? A. Yes, sir. . . . Q. Now you stated in re-

sponse to question by counsel, that you explained to him what the Arkansas law was about lost time, did you do that? A. I understood that the men were entitled to half their money if they were injured on the job. Q. You explained that fact to Mr. Harrison? A. Yes, sir. . . . Q. You gave him a voucher? A. He received a check for $9. Q. At that time? A. Yes, sir. . . . Q. This $9 is the only $9 that changed hands? A. Yes, sir. Q. Was there any additional consideration for the release? A. No, sir.''

It is our view that on the above testimony, and other evidence in the record, it was a question for the jury to determine validity of the release in question. Here it appears that although appellee was 21 years of age, had attended high school, could read and write for the nominal sum of $9 which appellant admits he told appellee he was entitled to as half-pay for the time lost, and for no additional consideration and under the belief that he was signing a receipt for $9 in wages that appellant represented appellee had coming to him, appellee signed the release without reading it.

While it is true that mere inadequacy of the consideration alone would not be sufficient to avoid a release, it may be taken into consideration along with all the other circumstances surrounding the procuring of the release.

In *C. H. Atkinson Paving Company* v. *Edwards,* 192 Ark. 961, 96 S. W. 2d 954, this court said: ''There cannot be a release of a cause of action for personal injuries without unequivocal acts showing expressly or by necessary implication, an intention to release. Generally the construction of the release as to the actual intent of the parties presents a question of fact to be determined from the surrounding conditions and circumstances, construed with reference to the amount of consideration paid and the language of the release itself. The amount of consideration paid should have considerable force in determining whether the release was simply paying the releasor for loss of time or some other specific element of damage, or whether it indicated payment of a sub-

stantial sum in consideration of which the releasee secured himself against all further developments and the releasor assumed the risk thereof. 23 R. C. L. 397; *Chicago, R. I. & P. Ry. Co.* v. *Matthews,* 185 Ark. 724, 49 S. W. 2d 392.''

And in *Hot Springs Railroad Co.* v. *McMillan,* 76 Ark. 88, 88 S. W. 846, this court said: ''These recitals (in the release) conveyed the impression that the railway company had paid and was to pay the amounts named as part consideration for the execution of the release. Proof that these recitals were false, by showing that these amounts were already due him according to the custom of the company in dealing with its disabled employees, certainly tended to establish the contention of appellee that the alleged release was fraudulent, and that when he signed same he did so under the impression that he was signing a receipt for money due, and which the company had paid according to its custom, and not as a part consideration for a release.''

We hold, therefore, that the jury was justified in finding the release was not binding.

### 5.

It is next contended that the trial court erred in giving plaintiff's requested instructions. We think, however, after a careful review of all the instructions given on behalf of appellee, as well as those given on behalf of appellant, that they correctly declared the law applicable to the facts presented.

### 6.

Finally appellant insists that the verdict is based on speculation and conjecture and is excessive.

The testimony is undisputed that appellee sustained scalds and burns on his legs and feet. Appellee testified that there were 12 or 15 injured places on his feet and that the doctor had to cut out particles of cement with a knife. Dr. Wood testified that as a result scar tissues were left which are more vulnerable to infections than normal skin would be. From these scalds and burns

appellee suffered considerable pain and as a result he was unable to work from July 27 to August 7.

We are unable to say that the injuries which appellee sustained, with the consequent pain and suffering, are not sufficient to support the verdict of $500 returned by the jury in this case, nor do we think that there is anything in this record to indicate that the verdict could have been the result of passion or prejudice.

On the whole case, finding no error, the judgment is affirmed.