WILSON *v*. SOUTHWEST CASUALTY INS. CO.

5-1342                                        305 S. W. 2d 677

Opinion delivered October 14, 1957.

*Cockrill, Limerick & Laser* and *Jacob Sharp, Jr.,* for appellant.

*Joe E. Purcell* and *O. Wendell Hall, Jr.,* for appellee.

Ed. F. McFaddin, Associate Justice. This appeal results from a collision of motor vehicles. Two automobiles were involved in a traffic mishap in Saline County on December 12, 1955. The Pelton car was driven by appellee Mrs. Lois Pelton, and was insured by Southwest Casualty Insurance Company (hereinafter called "Southwest"). The Wilson car was driven by appellant, Mr. Williams, and was insured by the State Farm Bureau Casualty Insurance Company (hereinafter called "State"). Both cars were damaged and Mrs. Pelton also received personal injuries, in that her knee was lacerated and her abdomen was bruised.

Mrs. Pelton was treated by her physician, Dr. Ashby, of Benton; and on December 29, 1955, he told her that she was on the way to recovery. The same day, Mr. Lindsey, the claims adjuster for State, called on Mr. and Mrs. Pelton and, for $150.00, obtained for Wilson and Williams a full release from Mr. and Mrs. Pelton.[1] For an additional $10.00 Mr. Lindsey obtained the Peltons' covenant to hold Wilson and Williams harmless from any claim of the Pelton's minor child, who received a bruised

---

[1] Here is a copy of the release: "For the sole consideration of One Hundred Fifty and no/100 Dollars, the receipt and sufficiency whereof is hereby acknowledged, the undersigned hereby releases and forever discharges Lee A. Williams and Ray Wilson, their heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable, or who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person or property, which have resulted or may, in the future, develop from an accident which occurred on or about the twelfth day of December, 1955, at or near Benton, Arkansas. Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned. In witness whereof, we have hereunto set our hands and seals this 29th day of December, 1955. (Signed) Lois Pelton, E. L. Pelton."

elbow in the mishap. Thus, for $160.00, Mr. Lindsey settled for his company and its insured all personal injury claims of the Peltons; but these releases are now claimed by the Peltons to have been obtained by fraud, as will hereinafter be stated.

Southwest paid $429.82 for the repair of the Pelton car which it had insured, and then filed action[2] against Wilson and Williams for that amount, since State had refused to pay Southwest. Wilson and Williams denied all liability to Southwest, and then cross-complained against Mr. and Mrs. Pelton for $400.00 [3] as the amount of damages inflicted on the Wilson and Williams car in the collision. The Peltons denied all liability; and Mrs. Pelton cross-complained against Wilson and Williams for $32,000.00 for her personal injuries. When Wilson and Williams pleaded the release signed by Mrs. Pelton, she alleged that it had been procured by fraud practiced by the claims adjuster, Lindsey.

The issues thus made were tried to a jury on special interrogatories under our comparative negligence statute (Act No. 191 of 1955). In its answer to the interrogatories, the jury found: (a) that Williams, the driver of the Wilson-Williams car, had been guilty of 75% of the negligence in the collision and that Mrs. Pelton had been guilty of 25% of such negligence; (b) that Southwest had suffered a total damage of $429.82 and the Wilson-Williams car had suffered $400.00 damage; (c) that Mrs. Pelton was not the agent of Mr. Pelton at the time of the collision; (d) that Lindsey, the claims adjuster for Wilson and Williams, practiced fraud in obtaining the release from Mrs. Pelton; (e) that Mrs. Pelton did not ratify the fraud; (f) and that Mrs. Pelton had suffered damages of $2,500.00. After making the mathematical calculations—under the comparative negligence statute —the Court, inter alia, rendered judgment in favor of Mrs. Pelton and against Wilson and Williams for

[2] Mr. Pelton, as the owner of the car, was made a nominal plaintiff by Southwest, but he sought no relief.

[3] The amount was originally alleged to be $550.00, but later reduced by stipulation to $400.00, and the jury returned a verdict against Mrs. Pelton for $400.00, as subsequently to be mentioned.

$1,775.00; and they prosecute this appeal. Appellants claim two errors committed by the trial court: (1) the refusal to give a peremptory instruction for appellants; and (2) the giving of appellees' instruction No. 1. These assignments will be discussed in the order listed.

I. *Appellants' Claim For Instructed Verdict.* Under this assignment appellants claim: (a) "There is no substantial evidence to sustain the finding that Lois Pelton was induced by fraud to sign the release"; and (b) "Lois Pelton ratified the release and settlement." We discuss these under two sub-heads.

(a) *Fraud in Procurement.* Mr. and Mrs. Pelton testified that the claims adjuster, Lindsey, over-reached Mrs. Pelton in the release; that he failed to advise her as to her rights; that he failed to tell her to consult an attorney; and that he obtained the release of her claims for physical injuries for a grossly inadequate consideration. The evidence as to fraud in settling for physical injuries is not sufficient to take the case to the jury; but there is another phase of the testimony, as to fraudulent procurement, that was amply sufficient, in itself, to take the case to the jury. We now discuss it.

Mr. Pelton testified: that before the Peltons executed the release they asked Mr. Lindsey what he was going to do about settling with Southwest; that Mr. Lindsey stated that just as soon as he got the release signed by the Peltons, he would go immediately to Hot Springs and settle with Southwest; and that Lindsey stated that he could not settle with Southwest until he had the release by the Peltons. Mr. Pelton testified to the same effect; and also that the Peltons would not have signed any kind of release unless Mr. Lindsey had assured them that he was going to immediately settle with Southwest. That the Peltons understood, from what Lindsey told them, that a settlement by Lindsey with Southwest would free the Peltons from any litigation, is reflected by Mr. Pelton's testimony:

". . . would you have signed that piece of paper for a consideration of $150.00 if you had known they were

even thinking about suing you for $400 in two or three weeks?

"A. No, sir."

Mr. Lindsey, in denying the testimony of Mr. and Mrs. Pelton, stated that he never settled with Southwest, and that he never intended to settle with Southwest. So, under this testimony, we have Lindsey obtaining a release from Mrs. Pelton, and then Wilson and Williams suing her in this case for $400.00 damages. It seems unreasonable that she would settle her physical injury claim against Wilson and Williams for $150.00 and at the same time leave herself exposed to their damage suit against her for $400.00 (on which claim the jury herein returned a verdict against her for $400.00). If Lindsey had settled with Southwest—as the Peltons claim he promised to do—then Mrs. Pelton understood, from what Lindsey said, that she would not be liable to suit by Wilson and Williams. So, we have testimony by the Peltons that they executed the release because of Lindsey's fraudulent representation that he would immediately settle with the Peltons' insurance carrier. A promissory representation may be the basis of fraud in procuring a release if the promissor never intended to fulfill the promise and made it for the purpose of obtaining the release. *Pierce* v. *Sicard,* 176 Ark. 511, 3 S. W. 2d 337. On this point, there was a question for the jury.

Furthermore, the cases hold that if the release is obtained by fraud in one respect, then it is voidable in its entirety. In 76 C. J. S. 651, "Release," Sec. 27, the holdings are summarized in this language:

"If a misrepresentation amounting to fraud is made as to any matter embraced in the release the instrument is vitiated as a whole, and not merely as to the matter to which the misrepresentation relates, every portion and clause of a release voidable for fraud in its inception is unenforceable and not binding."

See also 53 C. J. 1219; 13 C. J. 390; 23 Am. Jur. 946, "Fraud and Deceit," Sec. 145; *Richardson* v. *Vick,* 125 Tenn. 532, 145 S. W. 174; and *Newell* v. *Mayor,* 15 N. Y. S. 911.

So, on the reasoning herein stated, we hold that there was sufficient evidence to take the case to the jury on the issue of fraud in the procurement of the release, even though the evidence as to fraud regarding Mrs. Pelton's physical injuries was insufficient.

(b) *Ratification.* We quote appellants' opening paragraph on this point:

"Even conceding that Lois Pelton was fraudulently induced to sign a release of liability for her personal injuries, and certainly appellants earnestly contend that there is no substantial evidence to justify such a finding, the trial court nevertheless erred in refusing defendants' request for a directed verdict on Lois Pelton's cross-complaint because the undisputed evidence compels the conclusion that she ratified the release and settlement and thereby waived any right to avoid the release for fraud. She was certainly under a duty to disaffirm the release after discovering the truth about the misrepresentations which she says Ben Lindsey made."

In *Teare* v. *Dennis,* 222 Ark. 622, 262 S. W. 2d 134, in discussing rules regarding ratification of instruments obtained by fraud, we said: "After the defrauded party with knowledge of the facts has elected to treat the contract as valid, he cannot change his position and assert that it is invalid." So the evidence must be examined to see what Mrs. Pelton did after she learned that Lindsey had not settled with Southwest. She testified that it was not until she was made a party to this case and sued for $400.00 (which was on March 23, 1956) that she learned that Lindsey had not settled with Southwest. If Lindsey had settled with Southwest she would not have been sued. On April 6, 1956, she filed her answer and cross-complaint against Wilson and Williams. So, fourteen days after she said she learned of the alleged fraud in procurement, she definitely disavowed the settlement. Even though Mrs. Pelton might have learned in February that Lindsey had not settled, still she was lulled into security; and according to her testimony she did not ratify the settlement after she learned that Lindsey had not settled with Southwest. There was evidence offered by the ap-

pellants tending to show that she should have known earlier and that she had ratified the settlement in other ways. But we are here concerned only with whether the court should have directed a verdict for the appellants on the issue of ratification; and we conclude that the evidence presented a disputed question of fact for the jury on such issue. So the trial court was correct in refusing appellants' request for a directed verdict.

II. *Appellees' Instruction No. 1.* The said instruction as given by the court read:

"You are instructed that if you find from a preponderance of the evidence in this case that the defendants' agent did induce Lois Pelton, by fraud to sign the release, then the release would be void and would not prevent a recovery for her in this case. And in that connection, you are instructed that the adequacy or inadequacy of the consideration paid may be considered by you, along with all the other facts and circumstances, in determining the issue of fraud in the procurement of the release.

"You are further instructed that if you find from a preponderance of the evidence in this case that the consideration was 'grossly' inadequate, then this, alone, is sufficient for you to find that the defendants' agent did induce Lois Pelton, by fraud to sign the release."

Against this instruction, the appellants offered a number of specific objections, only two of which are argued in the briefs in this Court. We mention these now:

The first specific objection is: ". . . that the jury is given no definition of the phrase 'grossly inadequate'; that there are no elements going to constitute such gross inadequacy set out in any manner in the instruction; and that it is entirely abstract; . . ." The second specific objection here argued against the instruction is: "The instruction does not limit the jury, in their deliberations, to a consideration of the facts as they existed at the time the release was executed. It thus permits the jury to examine the amount of the consideration

paid for the release in the light of events that occurred after the release was executed and which were not foreseeable by the parties.''

We hold that the said instruction was fatally defective as against these two specific objections. Without any definition of ''grossly inadequate,'' and without limiting the inadequacy to the conditions that existed at the time the purported release was executed, the instruction, in effect, told the jury that if Mrs. Pelton settled for an extremely small amount of money, the jury could find that such small settlement was itself sufficient to support the claim of fraud; and that to decide whether the settlement was a small amount of money, the jury could consider all Mrs. Pelton's injuries that were unknown even to her at the time of the settlement and that came to her attention thereafter.[4] In other words, in the light of these two specific objections, to hold an instruction like this one good would be to say that in any case if a person received a very small amount of money and it later developed that the person had considerably more injuries than were then known, the release should be set aside merely because the consideration was small. Absent fraud, over-reaching, undue influence, and mental incapacity, people should be allowed to make the kind of contracts that they desire. If a person wants to settle a personal injury claim for a small amount of money in order to be relieved from other obligations, then he should be free to do so. Likewise, when a person, *sui juris,* makes a settlement in the light of his then knowledge, he cannot use after-acquired information about his physical condition to increase the claim for a larger amount. So, the instruction was fatally defective as against the two objections.

It is true that in some of our opinions we have used language on this ''grossly inadequate'' portion of the instruction, which language was lifted out of context and placed in this instruction. One such case is *C. R. I. & P.* v. *Matthews,* 185 Ark. 724, 49 S. W. 2d 392. In that case we said that a grossly inadequate consideration for a re-

---

[4] It must be remembered that Mrs. Pelton relied on her own views and those of her own physician.

lease could be considered as affecting the question of fraud in procurement; and that if the consideration be grossly inadequate, it was a "circumstance" which, in connection with all the other circumstances might be submitted to the jury; and such gross inadequacy was sufficient to carry the question of fraud or undue influence to the jury; It is one thing to say that a grossly inadequate consideration could carry the case to the jury; but the instruction here involved, in effect, told the jury that, independent of all the facts and circumstances, this matter of grossly inadequate consideration was sufficient to support a verdict. Such is not good law.

Furthermore, the term "grossly inadequate" should have been defined and limited to the facts then in existence and known, and not to subsequently ascertained injuries. In *Smith* v. *Mo. Pac. Trans. Co.,* 197 Ark. 692, 122 S. W. 2d 176, a release had been executed shortly after the injury and subsequent injuries thereafter developed. The release was held good against the subsequently developed injuries because the release was executed in the light of conditions as they then existed. To the same effect, see *Miss. River Fuel Corp.* v. *Hamilton,* 200 Ark. 475, 139 S. W. 2d 404.

We conclude that the plaintiffs' Instruction No. 1 was fatally defective as against the specific objections offered; and for that reason the judgment is reversed and the cause is remanded.