Edgar **HUTCHESON** and Lena Hutcheson, Appellants,

v.

**FRITO-LAY, INC.**, Appellee.

No. 17103.

United States Court of Appeals
Eighth Circuit.

April 17, 1963.

Donald S. Ryan and Richard L. Pratt, of Pope, Pratt & Shamburger, Little Rock, Ark., for appellant.

Robert S. Lindsey and Philip S. Anderson, Jr., of Wright, Lindsey, Jennings, Lester & Shults, Little Rock, Ark., for appellee.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

VOGEL, Circuit Judge.

Plaintiffs-appellants brought this action against defendant-appellee to recover damages by reason of personal injuries allegedly sustained by Lena Hutcheson in a truck-car collision. Defendant answered and along with other defenses pleaded that on May 10, 1961, the plaintiffs for a valuable consideration released the defendant from any and all actions, claims or demands of whatsoever kind or nature and arising out of the

accident of April 7, 1961. Defendant moved under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., for summary judgment and based such motion on the deposition of the plaintiff Lena Hutcheson, the release signed by the two plaintiffs, and a draft of the American Insurance Company drawn in favor of the plaintiffs in the amount of $152.98 containing on the face thereof a release of all claims and which was endorsed by the plaintiffs. Plaintiffs resisted the motion and offered in support thereof an affidavit and the deposition of the plaintiff Lena Hutcheson; deposition of John F. White, representative of the defendant's liability insurance carrier; and the correspondence between defendant's insurance company and the plaintiffs. The District Judge, after giving full consideration to the contentions of the parties, granted the defendant's motion and directed the dismissal of the plaintiffs' complaint. See D.C., 204 F.Supp. 576. Plaintiffs brought this appeal from the judgment so entered. Diversity of citizenship and amount involved satisfy federal jurisdictional requirements.

The essential facts are not in dispute. The accident occurred on April 7, 1961, in Harrison, Arkansas. Plaintiff Lena Hutcheson, accompanied by her husband, plaintiff Edgar Hutcheson, was driving in a northerly direction on State Highway 65. As she approached the intersection of Stevenson Street, she came to a stop in obedience to an electric traffic control signal. A vehicle belonging to the defendant and driven by its employee Joe S. Roitz came to a stop immediately behind the Hutcheson car. When the traffic light changed, Mrs. Hutcheson started ahead into the intersection, intending to turn to her right on Stevenson Street. Because of pedestrians walking in a southerly direction on the east side of the intersection, she came to a complete stop, whereupon defendant's vehicle ran into the right rear corner of the Hutcheson car. The usual charges of negligence and contributory negligence are set forth in the pleadings.

Following receipt of notice of the occurrence of the accident, the defendant's insurance company, the American Insurance Company, through its claims adjuster John F. White, wrote to Mrs. Hutcheson on April 11, 1961, as follows:

"Dear Mrs. Hutchenson:

"We will appreciate your filling out the enclosed forms in duplicate in connection with the accident which occurred on or about April 7, 1961 at or near Vine and Stevenson Streets, Harrison, Arkansas when your vehicle was involved in an accident with a car driven by Joe S. Roitz."

On April 14, 1961, Mrs. Hutcheson completed the claim form and returned it to the insurance company. Therein she indicated she was the driver of the car and the wife of its owner and that they were making claim for $181.14, representing one of three estimates covering repair. In answer to the question, "Names of all persons in your car injured", Mrs. Hutcheson wrote, "None", although she claims that beginning with the day of the accident she had pains in her back. Of the three repair estimates sent in by the plaintiffs, one was in the amount of $116.81. On April 21, 1961, the insurance company wrote the plaintiffs as follows:

"Dear Mr. and Mrs. Hutchinson:

"Enclosed is our draft #9861 in the amount of $116.81 and payable to both of you for damages to your car.

"Please have the attached releases executed and *LEAVE THE DRAFT ATTACHED TO THE RELEASES,* when presenting it for payment, as the draft cannot be honored for payment unless it is accompanied by the properly executed releases."

The plaintiffs were dissatisfied with the amount of the offered settlement and went to their own insurance agent for assistance, during the course of which interview Mrs. Hutcheson advised that her back was hurting but "I will come

out of that, I want my car fixed." The draft in the amount of $116.81 and the release were returned to the insurance company unexecuted. On April 28, 1961, the insurance company mailed a new draft in the amount of $152.98, together with a release to the Hutchesons. The plaintiffs held the proffered check and release for a time but on May 10, 1961, they appeared at the office of Roy Milum, a Notary Public, where they executed the release and had it witnessed and notarized. At that time Mrs. Hutcheson was still suffering pain in her back and since April 14, 1961, almost a month before, had been under the care of her doctor. In answer to the question, "Did you read the release while it was out at your house and before you took it to Mr. Milum?", she answered, "Why yes I read it, I didn't pay much attention to it, I just thought that I could fight this back trouble off and get out of it maybe." The release executed by the plaintiffs covered all claims of any kind or nature whatsoever, including known and unknown injuries. Its caption at the beginning is in large letters and recites the legend: "FULL AND FINAL RELEASE COVERING ALL CLAIMS OR RIGHTS OF ACTION OF EVERY DESCRIPTION, PAST, PRESENT OR FUTURE." The draft endorsed by the plaintiffs stated on the face thereof:

"In full settlement of all claims for known and unknown injury to person and for damage to property now existing or hereafter arising as a result of an accident occurring on or about April 7, 1961, at or near Vine and Stevenson Streets, Harrison, Arkansas it being understood and agreed that the above amount is the sole consideration of this release and payee(s) by acceptance and endorsement hereof forever release(s) and discharge(s) from all further claims and payments because of said accident the following named parties and all other persons, firms or corporations: H. W. Lay and Company, Inc., Brooks Potato Chip Company and Joe S. Roitz."

On the basis of this record, the District Court found that there remained no genuine issue as to any material fact, that there was no mutual mistake or mistake of one party accompanied by fraud or other inequitable conduct on the part of the other. In appealing to this court from the judgment of dismissal which followed, plaintiffs claim that there were issues of material facts involving the adequacy of the consideration, fraud on the part of the insurance company and mutual mistake of the parties. The law of Arkansas is, of course, controlling.

The District Court cited and relied on Foster v. Dierks Lumber & Coal Co., 1927, 175 Ark. 73, 298 S.W. 495, wherein the Supreme Court stated at page 496 of 298 S.W.:

"It is well settled under the former decisions of this court that equity has jurisdiction to cancel or reform written instruments either where there is a mutual mistake, or where there has been a mistake of one party, accompanied by fraud or other inequitable conduct of the other party, but, before it will do so, there must be something more than a mere preponderance of the evidence. It has has been uniformly held under such circumstances that the proof must be clear, unequivocal, and convincing. American Alliance Insurance Co. v. Paul (Ark.) [173 Ark. 960] 294 S.W. 58, May 2, 1927; Welch v. Welch, 132 Ark. 227, 200 S.W. 139."

See also Mississippi River Fuel Corp. v. Hamilton, 1940, 200 Ark. 475, 139 S.W. 2d 404; Benedum-Trees Oil Co. v. Sutton, 1939, 198 Ark. 699, 130 S.W.2d 720; Toland v. Uvalde Construction Co., 1939, 198 Ark. 172, 127 S.W.2d 814; and Crockett v. Missouri Pac. R. Co., 1929, 179 Ark. 527, 16 S.W.2d 989, wherein the Arkansas Supreme Court stated at page 990 of 16 S.W.2d:

"The undisputed testimony shows that appellant's intestate, the person injured in the collision or accident, executed a full release to the

railroad company for all damages or injuries, including both known and unknown injuries and future developments thereof growing out of or in any way resulting from the accident or collision, describing it, for the consideration paid, and, there being no fraud alleged or proved in the procurement of the injured person's acceptance of its terms, no mental incapacity alleged or shown, and no claim of the injured person having executed the release in reliance upon the statement of a physician as to the extent of the injury suffered, both parties were necessarily bound by it, and the court did not err in directing the verdict. Kansas City Southern R. Co. v. Armstrong, 115 Ark. 123, 171 S.W. 123; Francis v. St. Louis, I. M. & S. R. Co., 102 Ark. 616, 145 S.W. 534; St. Louis, I. M. & S. R. Co. v. Campbell, 85 Ark. 592, 109 S.W. 539; Missouri Pac. Ry. Co. v. Elvins, 176 Ark. 737, 4 S.W.(2d) 528."

While the plaintiffs charge inadequacy of consideration, fraud and mutual mistake, we agree with the District Court that the undisputed facts admit of no such finding. Plaintiffs concede that Arkansas is in accord with the general rule that inadequacy of consideration alone is not sufficient to vitiate a release. In Harmon v. Harrison, 1941, 201 Ark. 988, 147 S.W.2d 739, the Arkansas Supreme Court stated at page 741 of 147 S.W.2d:

"While it is true that mere inadequacy of the consideration alone would not be sufficient to avoid a release, it may be taken into consideration along with all the other circumstances surrounding the procuring of the release."

■ In the more recent case of Wilson v. Southwest Casualty Ins. Co., 1957, 228 Ark. 59, 305 S.W.2d 677, the Arkansas Supreme Court stated that a submissible jury question on the issues of fraud or undue influence may be made through the presence of the additional factor of in-adequate consideration, but that such a circumstance could not independently support a verdict. Such statement was again approved by the Arkansas court in the recent case of Creswell v. Keith, 1961, 233 Ark. 407, 344 S.W.2d 854.

■ In the light of subsequent events it may well be that the consideration paid for the release was inadequate to compensate the plaintiffs for the personal injuries sustained by Lena Hutcheson. The release, however, must be judged by the circumstances and conditions existing at the time of its execution. The adequacy or inadequacy of the consideration may not be viewed in the light of after events. Mrs. Hutcheson and her husband were the only ones who knew anything about the injuries. She was fully aware of them and had been to see a doctor with reference to them. She denied their existence in making the claim to the insurance company but nevertheless at the same time reported her injuries to her own insurance agent and also to her doctor. She stated to her own agent:

"My back is hurt, but I will come out of that, I want my car fixed."

In Wilson v. Southwest Casualty Ins. Co., supra, the Arkansas court said, at page 682 of 305 S.W.2d:

"Furthermore, the term 'grossly inadequate' should have been defined and limited to the facts then in existence and known, and not to subsequently ascertained injuries. In Smith v. Missouri Pac. Trans. Co., 197 Ark. 692, 122 S.W.2d 176, a release had been executed shortly after the injury and subsequent injuries thereafter developed. The release was held good against the subsequently developed injuries because the release was executed in the light of conditions as they then existed. To the same effect, see Mississippi River Fuel Corp. v. Hamilton, 200 Ark. 475, 139 S.W.2d 404."

It cannot be said here that the consideration was "grossly inadequate" in light of the circumstances existing at the time

and known by Mrs. Hutcheson. Additionally, inadequacy of the consideration to be effective must be coupled with and viewed in the light of other circumstances, such as fraud, misrepresentation or mutual mistake.

■■ Mrs. Hutcheson claims to have been mistaken as to the legal effect of the release which she and her husband executed. To be grounds for avoidance of the executed release, the mistake must be mutual. Fullerton v. Storthz, 1930, 182 Ark. 751, 33 S.W.2d 714. The Arkansas court stated at page 717 of 33 S.W.2d:

> "Nor is a contract reformed for mistake, unless it be clearly shown that the mistake was common to both parties, and that the contract as executed does not express the contract as understood by either of them."

Assuming, *arguendo*, that both parties to the release were mistaken as to some facet of the negotiations or the release contract, they were quite obviously not mistaken on the same matter. Mrs. Hutcheson claims that she did not understand the full import of the release agreement and mistakenly believed it to cover only the damages to the automobile. However, there can be no genuine factual question as to the insurance company's understanding of the full legal effect of the release, nor do plaintiffs claim that the company was mistaken as to such effect. What they do claim is that the insurance company was mistaken as to the existence of Mrs. Hutcheson's injuries; a mistake, it must be noted, that was entirely the fault of Mrs. Hutcheson herself. Again, there is no question but what Mrs. Hutcheson was aware that she had injuries, even if she was not aware of their full extent. It must follow that any mistakes that possibly existed were not mutual in nature, and consequently not a ground for rescission.

■■ It is true, of course, that the mistake of one party if accompanied by fraud or misrepresentation or other inequitable conduct by the other party may be sufficient to avoid a release. Foster v. Dierks Lumber & Coal Co., supra. Here, however, the record discloses no possibility of establishing fraud or misrepresentation on the part of the insurance company. The company dealt at arm's length with the plaintiffs. The entire transaction was through the mails. First there was the claim blank which Mrs. Hutcheson completed and returned; then the attempt on the part of the insurance company to settle for the smaller amount; the dissatisfaction of the plaintiffs therewith and their returning the draft and release; and finally the insurance company making a further offer by the forwarding of a draft in a larger amount plus a release which the plaintiffs ultimately executed on May 10, 1961. There being absolutely no independent evidence of fraud, misrepresentation or other inequitable conduct, the possible existence of a unilateral mistake or of inadequate consideration could not vitiate the effect of such a release.

Affirmed.

BLACKMUN, Circuit Judge (concurring in part and dissenting in part).

I concur with respect to Edgar Hutcheson but I dissent so far as his wife Lena is concerned.

Three fundamental propositions are important here:

a. Edgar's and Lena's causes of action in Arkansas are separate and distinct. Little Rock Gas & Fuel Co. v. Coppedge, 1915, 116 Ark. 334, 172 S.W. 885, 889; Missouri Pac. Transp. Co. v. Miller, 1957, 227 Ark. 351, 299 S.W.2d 41; Bailey v. Stewart, 1963, 236 Ark. 80, 364 S.W.2d 662. And the Miller case discloses that Arkansas' highest court entertains a considerate attitude toward the independence of married women's rights.

b. This case comes to us as an appeal from a summary judgment. It is not an appeal after a full hearing on the merits. This court repeatedly has made known its strict attitude toward a summary judgment. We have described it as a "harsh remedy" and as an "extreme rem-

edy". We have restricted its use to situations where the defendant "is entitled to its allowance beyond all doubt" and where his entitlement is shown "with such clarity as to leave no room for controversy". We have said that "all reasonable doubts touching the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment". United Pac. Ins. Co. v. United States ex rel. Mississippi Valley Equip. Co., 8 Cir., 1961, 296 F.2d 160, 165; United States v. Farmers Mut. Ins. Ass'n, 8 Cir., 1961, 288 F.2d 560, 562; Traylor v. Black, Sivalls & Bryson, Inc., 8 Cir., 1951, 189 F.2d 213, 216, and cases cited. Compare Thomason v. Hospital T. V. Rentals, Inc., 8 Cir., 1959, 272 F.2d 263. This very panel in another case presented at the same term of court has in general reaffirmed this approach. Doza v. American Nat'l Ins. Co., 8 Cir., 1963, 314 F.2d 230.

c. The Supreme Court of Arkansas has enunciated for that state the rule that a release, to be effective, must be supported by consideration and that absence of consideration renders a release unenforceable:

"A release like any other contract, must be supported by some consideration". Golf Shaft & Block Co. v. O'Keefe, 1940, 200 Ark. 529, 139 S.W.2d 691, 693.

"Lack of consideration, misrepresentation amounting to fraud, and also duress may be shown to set aside a release, and these are questions of fact". Creswell v. Keith, 1961, 233 Ark. 407, 344 S.W.2d 854, 855.

The record on this appeal is reviewed properly only with full awareness of this Arkansas liberality toward married women's rights, of our own strict approach to summary judgments, and of the Arkansas requirement that there be consideration for a release. Such a review convinces me that the majority opinion is right so far as Edgar's cause of action is concerned but it leaves me troubled as to Lena's.

Edgar. The material on which the disposition of the motion for summary judgment was based included the discovery deposition of the claims adjuster for the defendant's insurer. He produced the original accident report submitted by Lena to the insurance company. This contained Lena's statement that the Hutcheson automobile was driven by Lena but owned by Edgar. I find nothing in the present record which controverts the existence of an element of ownership of the car in Edgar or, to put it another way, I find nothing in the record which contraindicates the defendant's and the plaintiffs' acceptance of this fact of ownership. It then follows that everything which the majority have said so well in their opinion has appropriate application to Edgar and that the entry of summary judgment with respect to his presently asserted claim for deprival of his wife's consortium and of her services in the operation of their grocery store-filling station was proper.

Lena. But I am not at all convinced that the same result necessarily follows with respect to Lena. My lack of conviction here arises from the failure of the present record to show, without dispute, that legal consideration passed to Lena in return for her execution of the release. Edgar apparently was the registered and actual owner of the automobile; at least there is some evidence to that effect. There is evidence that the amount paid by the defendant was directed precisely to the estimated cost of repairs for property damage. Lena in her deposition stated that the garage which had submitted the lowest estimate made, at her own agent's request, a new appraisal, that this was sent in and that a new and larger draft came back. Even so, this draft was less than the original claim for $181.14 which, as the majority note, represented another of the three repair estimates. The district court itself observed, p. 579 of 204 F.Supp., that the draft was "made out to the plaintiffs for the amount of $152.98, the cost of the repairs to plaintiffs' car". The adjuster in twice transmitting drafts

said it was "for repairs [damages] to your car". The defense states in its brief that the insurance carrier "paid the full amount of a claim for property damage in a case of disputed liability". There is substantial evidence, therefore, to the effect that, although the draft was payable to both, the amount paid was only the damage to the automobile. If this is so and if the car is Edgar's, where, under Arkansas law and on this record, is it convincingly shown that there was consideration passing to Lena?

It is true, of course, that Lena in her deposition did state that the car "belonged" to "both of us"; that, in response to a question whether the car was registered in both their names, she said, "I doubt it, I bet it was just in his name"; and that she further said that her husband "can drive, he doesn't, he never gets to go anywhere, but he drives"; that about the time of the accident "I was doing all of it [the driving]"; that upon the accident "I saw what it had done to my car"; that "I [had] taken my car down there [to the garage]"; that "we had bought the car, when we bought our car there wasn't a blemish on my car"; that "I know one place I want to take my car to"; that "I was wanting my car fixed"; that "I am not going to worry about that, my back, my car is what's worrying me and getting it fixed"; and that "I want my car fixed". But these phrases of ownership strike me as no more than colloquial, familiar and common everyday expressions of a family member toward the affectionately regarded family vehicle. Moreover, they are the remarks of a woman obviously unacquainted and unfamiliar with legal connotations. These comments in the face of the insurance report's representation certainly do not settle for me the factual issue of ownership. That issue is important because its resolution determines the ensuing conclusion as to the presence or absence of consideration for Lena's release. It thus qualifies, for me, as an unresolved and genuine issue of material fact, within the meaning of Rule 56(c), F.R.Civ.P.

Of course, if the Arkansas law is to the effect that, even though Lena has no ownership in the automobile and it is owned in its entirety by Edgar, the detriment suffered by the defendant in effecting payment for the property damage constitutes legal consideration for Lena's release, see Hanson v. Northern States Power Co., 1936, 198 Minn. 24, 268 N.W. 642, 643, and West v. Kidd, 1931, 184 Minn. 494, 239 N.W. 157, the issue then would not be one of material fact. But these two Minnesota cases expound Minnesota law, not that of Arkansas. Minnesota, furthermore, may perhaps be regarded as a state where rights of married women are not so considerately viewed as in Arkansas. See, for example, Eschenbach v. Benjamin, 1935, 195 Minn. 378, 379, 263 N.W. 154, 155, and Hartman v. Cold Spring Granite Co., 1956, 247 Minn. 515, 516, 77 N.W.2d 651, 652. The plaintiffs in the present case have urged absence as well as inadequacy of consideration. The district court, as I read its opinion, passed only upon inadequacy and not at all upon absence of consideration.

I therefore am led to the conclusion that we are confronted with an unresolved and genuine issue of material fact, namely, the presence or absence of legal consideration passing to Lena for her release. In the alternative, we are at least confronted with an issue of Arkansas contract law which the State's Supreme Court apparently has not passed upon and which the district court here did not determine. Lena's case deserves remand at least for that purpose.

The majority holding necessarily embraces the conclusions that Lena as a matter of law received consideration for her release or, in the alternative, that it makes no difference whether she did or did not so long as her husband Edgar did. It may be that ultimately one of these will be the only conclusion possible in this case. I merely fail to see how at this point we may properly deprive Lena of the opportunity appropriately to demonstrate, if she can, the absence of con-

sideration flowing to her and the materiality of this absence. This she may not be able to do. Her burden is a heavy one, but I feel she is entitled to her day in court.