## Randall K. LYNCH *v.*
## MISSOURI-PACIFIC RAILROAD COMPANY

84-232                                      684 S.W.2d 817

Supreme Court of Arkansas
Opinion delivered February 25, 1985
[Rehearing denied April 1, 1985.]

*W.H. Armstrong* and *Bobby E. Shepherd,* for appellant.

*Herschel E. Friday* and *Donald H. Bacon,* for appellee.

GEORGE ROSE SMITH, Justice. This is a suit by Randall K. Lynch, now age 25, for personal injuries and property damage sustained when his pickup truck was struck by a Missouri-Pacific train at a crossing in Smackover. At the end of the trial the judge directed a verdict for the defendant, on the ground that Lynch had executed a valid release of his claim. The only question on appeal is whether there was any issue of fact concerning the validity of the release. Our jurisdiction rests on Rule 29 (1) (o).

The accident happened on a Thursday morning in

September, 1981. As Lynch was crossing the track his truck was struck by a train coming from his right at 20 to 25 miles an hour. Lynch was knocked temporarily unconscious and was taken to a hospital. His principal injury was a torn ligament that caused a shoulder separation — a painful injury. He was released that morning to go home, with instructions to return that night for surgery the next morning. The operation, with a general anesthetic, was performed on Friday morning. Lynch remained in the hospital another night and went home Saturday.

On Monday the accident was being investigated by a Missouri-Pacific claim agent, Dennis Lane. Taking a court reporter with him, Lane went to Lynch's home to obtain a statement, finding Lynch at home alone. The interview was taken down and transcribed by the reporter. Lynch was apologetic about the accident. He said that at the crossing he had looked to his left to see who was at work at the building where he was employed as an electrician. He did not look to his right. "I usually look, but that morning I guess I just took it for granted because I had went across it so many times." He did not see the train. "Like I said, it was my fault all the way. If I had looked it would have never happened." Near the end of the interview he said:

> But, you know, people have said well, you know, you ought to try to sue the railroad. Here is the way I look at it. It was my fault all the way, and I couldn't live with myself if I tried to do something like that. . . . And there is no way whatsoever, way, form or fashion that I would do that.

The claim agent testified that after the statement was concluded and the reporter had stopped taking it down, he asked Lynch if he was interested in making a settlement. The agent's offer of $500 was accepted and paid, without any dickering. Mrs. Lynch had come in; she signed the release along with her husband. At Lane's request they each wrote on the release, in longhand, "I have read this and understand it," and signed that also. The $500 check was deposited a couple of days later.

At the trial Lynch testified differently, saying that the train's whistle was not blown and that he had looked to his right, but his vision was obscured by vegetation. As to the release, he testified that he remembered letting a Missouri-Pacific agent into his house, but he remembered nothing else about the interview. He admitted that, as shown by the reporter's transcript, he had correctly given the date of his birth, his Social Security number, the dates of his children's birth and other information. He admitted the genuineness of his wife's signature and his own.

There is no proof that Lane was guilty of misrepresentation or undue influence, as alleged in the complaint. The only question is whether there is substantial evidence that would have supported a verdict finding, in the language of a case relied on by the appellant, that when Lynch signed the release "his physical or mental condition was such that. . .[he] was incapable of appreciating the character of the instrument and the consequences of executing it." *St. Louis, I.M. & S. Ry.* v. *Bearden,* 107 Ark. 363, 155 S.W. 499 (1913).

We find no such evidence. Lane testified that Lynch did not appear to be drowsy, in pain, or uncomfortable. The court reporter said he seemed normal. The transcribed interview, comprising 19 typewritten pages, shows that Lynch understood the interview and took full responsibility for the accident. There is no medical or other testimony that Lynch was incapable of transacting business that day, despite his injured shoulder. His doctor did testify that a general anesthetic may cause a temporary loss of memory, but the interview shows that Lynch had no such loss at the time. He had taken a pain medicine containing codeine, but there is no testimony that it incapacitated him. The $500 consideration was not grossly inadequate if Lynch was wholly or mostly at fault. Moreover, inadequacy of consideration alone is not ordinarily a sufficient basis for avoiding a release. *Harmon* v. *Harrison,* 201 Ark. 988, 147 S.W.2d 739 (1941).

The question is not whether Lynch told the truth when he disclaimed any recollection of the settlement. That is

immaterial. If the release was valid when executed, as the undisputed proof shows that it was, its validity could not be affected by Lynch's later loss of memory. Otherwise even the most solemn written instrument would not be safe from an attack based simply upon a loss of memory.

Affirmed.