FIRST NATIONAL BANK OF WYNNE v. Edna O.
LEONARD v. Joann HESS

86-109                                    711 S.W.2d 798

Supreme Court of Arkansas
Opinion delivered June 30, 1986

358

*Shaver, Shaver & Smith*, by: *Tom B. Smith*, for appellant.

*Joseph O. Boeckmann*, for cross-appellee.

*B. Michael Easley*, for appellee.

ROBERT H. DUDLEY, Justice. Edna Leonard, the plaintiff below and the appellee in this Court, purchased a clothing store in Wynne from Joann Hess, the defendant and counter-claimant below and cross-appellee here. At the time of purchase, counter-claimant Hess owed money to the First National Bank of Wynne, the defendant below and the appellant here. As consideration for the purchase, plaintiff agreed to make a $5,000.00 down-payment to counter-claimant Hess and assume the approximate $15,000.00 debt which was owed to the bank. Plaintiff, in running the store, was plagued by a lack of operating capital. In March 1983 she borrowed $2,000.00 for operating capital from the bank. To secure the debt, she signed a new note and security agreement and financing statement. The note was in the amount of $17,802.94, which represented the amount of debt assumed plus the loan for operating capital. Counter-claimant Hess guaranteed the note. The security agreement pledged all of the inventory and equipment of the store. Even after this loan plaintiff was short on operating capital and on March 30, 1983, the bank loaned her an additional $2,000.00. She executed a promissory note, and she gave a financing statement and security agreement pledging her automobile. Her financial problems continued, and on June 1, 1983, the defendant bank peacefully repossessed the contents of the store. The bank took an inventory and, although it did not have a security interest in the accounts receivable, attempted to collect the accounts receivable. Thirty days later the bank instructed counter-claimant Hess to liquidate the business. The bank mailed to plaintiff a notice of intent to sell the inventory, but the notice was never received by plaintiff because it was addressed to her at the store after the business had been closed and the locks changed. Hess sold the inventory and fixtures, and all of the funds received were applied to plaintiff's debt. There remained an outstanding balance of $7,602.94 plus interest which the endorser, cross-claimant Hess, paid.

On September 2, 1983, the plaintiff signed an agreement which allowed her to refinance her car for the consideration of executing a release. In addition, she signed an agreement styled

"Release of All Claims" by which she released any and all claims arising from the closing of her business.

Plaintiff later filed suit against the bank and cross-claimant Hess for wrongfully closing her business and doing so in a commercially unreasonable manner. She alleged the release was invalid because she was not competent at the time she executed it. Hess counter-claimed against plaintiff for the money she had paid as the promissory note guarantor. The jury returned a verdict on plaintiff's claim against the bank in the amount of $15,000.00 and a verdict on counter-claimant's claim against the plaintiff in the amount of $8,000.00. We affirm both verdicts.

The appellant bank filed a pre-trial motion, in the nature of a motion for summary judgment, to dismiss the complaint because the plaintiff had executed a release. Without objection, the trial court heard testimony on the motion and ruled that the issue of competency to sign the release was a matter for the jury. On appeal, the appellant bank contends that the trial court erred in not granting its motion to dismiss. The argument is without merit.

■■ A release may be voided if the person's physical or mental condition, at the time of signing, was such that he was incapable of appreciating the character of the instrument and the consequences of executing it. *Lynch* v. *Missouri Pacific Railroad Co.*, 285 Ark. 49, 684 S.W.2d 817 (1985). Viewing the evidence most favorably to appellee, as we must do, it is clear that there was a genuine issue concerning a material fact and that the trial court was correct in denying the motion to dismiss. At the hearing on the motion, the plaintiff testified that at the time she signed the release she was under a doctor's care for anxiety, stress, and psychological problems and was taking medication consisting of Ativan and depressants which "slows everything down." She testified that she was under stress, was physically impaired, and thought she was signing papers about her car.

■■ At trial, the appellant bank moved for a directed verdict at the close of all of the evidence on the ground that the plaintiff had not proved that "she should be relieved of the release by clear and convincing evidence that she did not have the mental capacity. . . ." The trial court denied the motion for a directed verdict, and the appellant now argues the ruling was in error. The trial court was right. Before discussing the point of appeal, we

note that the correct burden of proof was by a preponderance of the evidence. The clear and convincing burden is a standard applied at times in chancery cases, but not in law cases under our state standard.

To determine whether the trial court was right in refusing to grant a directed verdict for a defendant, the appellate court takes the view of the evidence most favorable to the plaintiff to see if there was any substantial evidence upon which the jury could have based its finding, and if there was substantial evidence affirms the denial of the motion. *Wenger* v. *Kiech*, 273 Ark. 369, 616 S.W.2d 714 (1981). Here, when viewed in the light most favorable to appellee, there was substantial evidence upon which the jury could find that appellee was not competent to execute the release. She testified that she did not know that she had signed a release. More importantly, she testified that on the day she signed the release she had taken two Ativan pills which "made me drowsy, wiped me out and blurred my vision." Her doctor testified that amount of Ativan could cause her to be dazed. Another witness testified that she drove appellee to the office of the bank's attorney where the release was signed, because appellee was so dazed she was unable to drive her own car, and while at the attorney's office plaintiff was crying and shaking.

The appellant also argues that the trial court erred in denying the motion for a directed verdict because the plaintiff ratified the action of the bank and because the plaintiff did not suffer any recoverable loss. However, these arguments were not made to the trial court, and we do not consider arguments raised for the first time on appeal.

Defendant and counter-claimant Joann Hess obtained a verdict against the plaintiff for the $8,000.00 which is the amount she had to pay to the bank on her guaranty of plaintiff's note. Plaintiff cross-appeals from the verdict claiming that the trial court erred by failing to grant a directed verdict or a judgment notwithstanding the verdict because counter-claimant Hess and the bank failed to comply with the Uniform Commercial Code's notice requirements for a secured party. The trial court was right. The bank was the secured party, not counter-claimant Hess. Hess was the guarantor of the note. The bank, not Hess, had the duty to give notice. Even if the notice was deficient,

it did not constitute a defense against Hess.

Affirmed on direct appeal and affirmed on cross-appeal.